**Glimmert BECKHAM,
Petitioner-Appellee,**

v.

**Louie L. WAINWRIGHT, Secretary,
Department of Corrections,
Respondent-Appellant.**

No. 80–5150.

United States Court of Appeals,
Fifth Circuit.
Unit B

March 12, 1981.

Rehearing Denied April 8, 1981.

Jim Smith, Atty. Gen., Tallahassee, Fla., Joel D. Rosenblatt, Asst. Atty. Gen., Miami, Fla., for respondent-appellant.

John D. Middleton, Florida Institutional Legal Services, Inc., Gainesville, Fla., (Court-appointed), for petitioner-appellee.

Before KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges and ALLGOOD *, District Judge.

KRAVITCH, Circuit Judge:

Glimmert Beckham was charged in a two count information with robbery and crime against nature. He withdrew a negotiated guilty plea and five-year sentence. A jury convicted him and he received a sentence of fifty years. He petitioned for habeas corpus claiming violation of his sixth amendment right to effective assistance of counsel: his attorney failed to advise him of the possible consequences of a jury trial and further stipulated to all elements of the crime. The trial court found his counsel to be ineffective and granted the writ. We agree and affirm.

Beckham originally pleaded not guilty; his appointed counsel, an assistant public defender, then entered into plea negotiations with the prosecutor. When they agreed upon a five-year sentence, Beckham withdrew his plea of not guilty and entered a plea of guilty. The trial court accepted the plea, but at the request of Beckham's counsel, it was contingent upon a psychiatric examination in order to determine his competency.[1]

Three psychiatrists examined Beckham: one found him competent, another concluded that he was not competent, and the report of the third doctor was inconclusive. Based upon the report of Dr. Corwin, who found that Beckham could not aid in his defense and that he did not know right from wrong, petitioner's counsel withdrew the guilty plea and negotiated sentence. The trial judge ruled that because of the

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. The record is not clear whether the medical experts were to determine Beckham's competency to enter a plea (i. e., whether Beckham's present mental state would permit him to enter a voluntary guilty plea or, if he stood trial, could aid in his defense), or Beckham's competence at the time he committed the offense (i. e., whether he knew the difference between right and wrong so as to make him culpable for his acts).

Subsequent events, however, make it apparent that the real issue was Beckham's competency at the time of the offense. Although Dr. Corwin indicated that Beckham was not competent to aid in his defense, the trial court ruled at the time the guilty plea was withdrawn that "I will adjudicate him competent to stand trial." Beckham's attorney did not object to this ruling. At the trial, as explained infra, the sole issue was whether Beckham knew the difference between right and wrong at the time he committed the offense.

conflict in the medical evidence, the adjudi- cation and sentence would be vacated and a trial held on the sole issue of competency.[2]

At the ensuing trial,[3] Beckham, through counsel, stipulated to all elements of the crimes with which he was charged; the state, therefore, presented no evidence in its case in chief. The testimony and evidence introduced related solely to appellee's affirmative defense of insanity; i. e., whether he knew the difference between right and wrong at the time he committed the offenses. The jury returned a verdict finding him sane and guilty. Immediately after the verdict was announced, appellee's counsel called to the court's attention the stipulated five-year sentence. The court ruled, however, that when appellee withdrew the guilty plea he also withdrew the stipulated sentence, and sentenced him to fifty years.

Following his conviction, Beckham appealed, raising only the issue of ineffective assistance of counsel. The district court of appeal affirmed the conviction. It declined to rule on the issue of ineffective assistance of counsel, however, allowing him to seek post-conviction relief as to that issue. Beckham v. State, 264 So.2d 30 (Fla.Dist.Ct. App.1972).

Beckham then filed a motion to vacate the conviction pursuant to Fla.R.Crim.P. 3.850, raising the ineffective assistance issue. After conducting a hearing at which appellee and his trial counsel testified, the trial judge denied relief. On appeal, the court found that appellee's counsel at worst exercised bad judgment and concluded that his representation did not amount to a "mockery or a farce." Beckham v. State, 339 So.2d 221 (Fla.Dist.Ct.App.1976).

Beckham filed a second motion for collateral relief in state court, raising the grounds of denial of the right to confrontation of witnesses and deprivation of the right to jury trial on all issues. This motion was denied by the trial court and affirmed on appeal. Beckham v. State, 353 So.2d 941 (Fla.Dist.Ct.App.1978).

Beckham next filed a petition for relief in federal district court, raising three issues: ineffective assistance of counsel, denial of

---

2. In relevant part, the transcript of this hearing reads as follows:

MR. HOPPENSTAND: I have read Dr. Corwin's report.

THE COURT: Well, I have to have Dr. Reichenberg's report, and here it is.

All right.

Does everybody stipulate and agree Dr. Reichenberg's testimony will be consistent with the report filed August 16, 1971?

MR. NEUMAN: So stipulated, your Honor.

MR. HOPPENSTAND: I will stipulate to that, but, before anything is done, since— when I represented this defendant and he entered his guilty plea, I announced to the Court that if the doctors found that he was insane or needed treatment that I would move to withdraw the guilty plea; and Dr. Corwin has so found that in his report.

THE COURT: Dr. Reichenberg disagrees and I think there was another psychiatrist.

THE CLERK: Dr. Mutter.

MR. HOPPENSTAND: Well, based upon the report of Dr. William Corwin where he says this defendant cannot aid in his own defense, he does not know right from wrong, I would have to move to withdraw the guilty plea and withdraw the stipulated five year sentence.

THE COURT: Well, how many doctor's reports do we have Ann?

THE CLERK: Three, Judge.

THE COURT: All right. We have got Dr. Mutter's.

Dr. Corwin says he is incompetent; Dr. Mutter says he is competent, Dr. Reichenberg says he thinks he is competent.

I am going to adjudicate him competent.

MR. HOPPENSTAND: Dr. Corwin thinks he needs some treatment.

THE COURT: Since there seems to be a genuine issue of fact I will permit you to withdraw the guilty plea, vacate the sentence, vacate the adjudication and we can go to trial on the sole issue of competency. But I will adjudicate him competent to stand trial.

MR. NEUMAN: Am I to understand, then, that the sole issue to be decided then would be competency, so it would not be necessary to subpoena the witnesses?

THE COURT: Do you want it to be tried before a jury or tried before a judge?

MR. HOPPENSTAND: Request a jury trial on it.

THE COURT: Granted.

3. Although the record does not indicate the entry of a not guilty plea following the withdrawal of the guilty plea, all parties apparently understood that this withdrawal reinstated the former not guilty plea.

the right to confrontation, and a "chilling" of the right to jury trial. The district court found that appellee's counsel fell below the minimum constitutional standards of competency: first, in withdrawing the five-year sentence and then stipulating to all the elements of the crime; second, in failing to ascertain whether appellee agreed to the stipulation of guilt; and third, in failing to advise him of the consequences of withdrawing the stipulated sentence.[4]

■ The sixth amendment right to counsel is a fundamental right, *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and the Supreme Court has held that ineffective assistance of counsel does not satisfy this constitutional command. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Adequate counsel under the sixth amendment is counsel likely to render and rendering reasonably effective assistance. *Mays v. Balkcom*, 631 F.2d 48 (5th Cir. 1980). Errorless counsel is not required, *Kemp v. Leggett*, 635 F.2d 453 (5th Cir. 1981), and counsel may not be judged ineffective by hindsight. *Lovett v. Florida*, 627 F.2d 706 (5th Cir. 1980). Claims of ineffective assistance of counsel require an inquiry into the actual performance of counsel and the determination whether representation was reasonably effective must be based on the totality of the circumstances. *Lovett, supra.*

■ The state urges on appeal that the decision of counsel to withdraw the plea and contest the sanity issue was a matter of trial strategy. The state correctly notes that tactical decisions do not constitute ineffective assistance simply because in retrospect it is apparent that counsel chose the wrong course. *See Akridge v. Hopper*, 545 F.2d 457 (5th Cir. 1977). Nor is an erroneous estimate by counsel as to the length of sentence necessarily indicative of ineffective assistance. *Johnson v. Massey*, 516 F.2d 1001 (5th Cir. 1975).

■ We do not agree, however, that counsel's actions in this case were merely tactical decisions. The district court found that appellee's counsel did not realize the consequences of withdrawing the guilty plea and proceeding to trial;[5] we may not disturb this finding unless clearly erroneous. *Wade v. Mayo*, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948); *United States v. Cruz*, 581 F.2d 535 (5th Cir. 1978). In this case there is uncontradicted testimony from Beckham and his counsel that neither were

---

4. The district court also held that appellee's rights to confrontation and to a jury trial had been infringed. Because we hold that the district court correctly found that petitioner did not receive effective assistance of counsel, we do not reach these issues.

The state argues that the confrontation and jury claims were not exhausted in the state courts and thus should be dismissed. We held in *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978) (en banc) that when a state prisoner presents a petition in federal court that presents both exhausted and non-exhausted claims, the district court must dismiss the entire petition. *Galtieri* further holds, however, that when the district court grants the writ as to an exhausted claim, this court will review that claim on the merits. In this case the state concedes that the ineffective assistance claim was exhausted. Regardless of whether the other claims were exhausted, therefore, we may properly decide the exhausted claim. *Galtieri, supra.*

We note that appellee did present his confrontation and jury claims to the state courts in a post-conviction motion. The court apparently denied the claims because they had not been raised on direct appeal. *Beckham v. State*, 353 So.2d 941 (Fla.Dist.Ct.App.1978). If that is the case, appellee has exhausted his state remedies on all three claims. The question remains whether this procedural default bars federal review. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). The district court found *Wainwright v. Sykes* inapplicable to this case. We expressly decline to decide this issue.

We also note the great disparity between the stipulated sentence, five years, and the sentence imposed by the judge at trial, fifty years. Appellant, however, does not challenge the sentence on due process grounds as posing a realistic likelihood of vindictiveness. *See Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Frank v. Blackburn*, (5th Cir. 1980) (en banc). Moreover, because we affirm the grant of the writ on other grounds, we need not reach this issue.

5. The district court did not conduct an evidentiary hearing pursuant to 28 U.S.C. § 2254(d); it based its decision on the state court record.

aware the five-year stipulated sentence was no longer in effect when they went to trial. In an affidavit filed ten days after the trial, the attorney stated that he never intended to withdraw the five-year sentence. Moreover, in this affidavit and in his testimony at the second state post-conviction hearing, he stated that he advised Beckham that he would receive a five-year sentence if found sane and would be placed in the state mental hospital if found insane. Beckham also testified in state court that his attorney advised him that the maximum sentence he could receive as a result of the trial was five years. We agree with the district court that counsel did not accurately advise Beckham of the consequences of standing trial on a not guilty plea; indeed, in representing to appellee that the worst possible outcome would be a sentence of five years, he affirmatively misstated the consequences.[6]

---

6. The conduct of Beckham and his counsel at the jury trial bolster the court's finding that they were not aware that he was subject to more than five years imprisonment. When the jury returned its verdict, the following colloquy took place:

THE COURT: What now has the defendant to say why sentence should not be passed upon you?

MR. HOPPENSTAND: Judge, if your Honor will recall when they pleaded the defendant guilty, there was a stipulated sentence with the State and myself. And at the time we entered the plea, we agreed that the question of sanity would be tried, but the State Attorney and myself had stipulated that this defendant be imprisoned for a term of five years, subsequent only to the determination of his sanity.

THE COURT: The transcript of the proceedings on that date reflect that you withdrew the guilty plea and withdrew to the stipulated five year sentence.

MR. HOPPENSTAND: Judge, that is not my understanding of it.

THE COURT: I had the record typed up. That is why I had the record typed up. Mr. O'Day, you were here, what was your understanding of it?

MR. O'DAY: Judge, I was present at the time of the stipulated plea, I forget who it was with—I forget the State Attorney.

THE COURT: It's not a question of turning back time. Someone withdrew the stipulation.

MR. O'DAY: I don't recall that, Judge.

THE COURT: The defendant stands before the court at this time without a stipulation.

MR. HOPPENSTAND: Judge, this is certainly not my intention. If I said this it was certainly not what I intended to say.

MR. O'DONNELL: Your Honor, I can't see why the State would consider anything else. This trial today would have been solely a one way street for the defendant. Had it not been that way, the State would have had nothing to gain.

THE COURT: I understand that. That is why I had the record typed up.

I try my best to be prepared.

MR. HOPPENSTAND: Judge, if that was the case, then I would have proceeded differently, if I had withdrawn the stipulated five year sentence.

THE COURT: That is what it states.

MR. HOPPENSTAND: That is what this record says, your Honor, but I don't believe that I did that.

There is one word in the record that—I don't like to contradict anybody—I mean, the court reporter or anybody else.

THE COURT: I didn't ever tell anybody that I was having the record typed up.

MR. HOPPENSTAND: I was under the impression that I did not agree to any greater sentence than that, because if I had agreed to that, I would have certainly have not agreed to everything that was in the Information and not put on a defense.

THE COURT: All right.

Beckham, is there anything you wish to say to the Court before sentence is passed?

THE DEFENDANT: (Shaking head in the negative.)

THE COURT: Enter adjudication; sentence you to be confined to hard labor for a term of 50 years.

THE DEFENDANT: Sir, could I say something? Sir, I didn't plead guilty to 50 years, I pleaded guilty to five years.

I gave my plea to stand trial by jury. If that was the case, I served the plea for larceny.

THE COURT: Well, for a man who is insane, you have certainly become very coherent.

THE DEFENDANT: That was the deal with you.

THE COURT: There was no deal with me. No one has ever made a deal with me.

THE DEFENDANT: This was what told to me, sir.

MR. HOPPENSTAND: Judge, I have never discussed this case—

THE DEFENDANT: I didn't plead guilty to no—

MR. HOPPENSTAND: Judge, I represented the defendant and I would like the record to be clear on that point.

THE COURT: The record, I am sure, is clear. I had it typed up.

We do not hold that counsel must obtain defendant's consent to every trial decision. The defendant need not be consulted each time his counsel fails to challenge facts proved by the prosecution. In certain cases, a stipulation to the facts charged in the indictment, and presenting evidence of an affirmative defense, *may* constitute an appropriate strategy. *Cf. United States v. Foundas*, 610 F.2d 298 (5th Cir. 1980) (rule governing advice to be given defendant before accepting a guilty plea does not apply to case submitted on stipulated facts). In this case, however, due to erroneous advice of counsel, appellee went to trial with a grave misconception as to the very nature of the proceeding and possible consequences.

When a defendant pleads guilty on the advice of counsel, the attorney has the duty to advise the defendant of the available options and possible consequences. *Brady v. United States*, 397 U.S. 742, 756, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). It is equally essential that the attorney advise a defendant of possible consequences where, as here, the defendant withdraws a negotiated guilty plea and stipulated sentence in the minimum range and instead stands trial and faces the maximum sentence. To prove that counsel was ineffective, the defendant must demonstrate that the advice "was not within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973), quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

Here, Beckham voluntarily entered a guilty plea on the advice of counsel, based on the assurance of a five-year sentence. He agreed to withdraw that plea on the representation of his attorney that the five-year sentence remained in effect although the attorney had no basis to assume that if Beckham was found guilty, he was assured of only a five-year sentence. We conclude that this advice of counsel falls outside the "range of competence of attorneys in criminal cases." *Tollett, supra.*

We hold that appellee did not receive effective assistance of counsel. Accordingly, the judgment of the district court granting the writ is AFFIRMED.[7]

MR. HOPPENSTAND: The only thing is, your Honor, that I don't believe that I withdrew the sentence, even though the record says that because if I had done that, I certainly would have gone to trial on the main issues.

THE COURT: Well—

THE DEFENDANT: Sir, I didn't have no knowledge of this here. It was understood by the prosecutor, and my attorney told me that if I plead guilty, I would receive five years. This is the understanding that I have.

THE COURT: Weren't you here in Court on August the 19th, when all this took place?

THE DEFENDANT: Sir, my plea wasn't no different—that I asked for an evaluation.

THE COURT: I allowed the plea to be withdrawn. You didn't plead guilty.

I wouldn't allow you to plead guilty. You wished the issue of competency to be determined by a jury. It has been so done.

THE DEFENDANT: My lawyer understood—told me, sir, that I was, I was—

THE COURT: Go ahead.

THE DEFENDANT: My lawyer told me that I was to take a sanity hearing, that to see whether my competence—I received my five year. This is my understanding of the charge.

THE COURT: Well, that is why I tried to protect the record. In any case, you were here.

THE DEFENDANT: I plead not guilty by a jury because I am not guilty of both of these charges.

THE COURT: The trial is over, the defendant is remanded. Let's go.

7. We affirm the relief ordered by the district court that

Petitioner be allowed to reinstate his original guilty plea and thereupon be resentenced by the Court or alternatively that he be granted a new trial within a reasonable period of time hereafter, failure of which the Writ of Habeas Corpus will be granted and the Petitioner released from custody.