Kenneth HAWKMAN, Appellee,

v.

Robert PARRATT, Warden, Nebraska Penal and Correctional Complex, Appellant.

No. 81–1233.

United States Court of Appeals, Eighth Circuit.

Submitted July 21, 1981.

Decided Oct. 14, 1981.

Rehearing Denied Nov. 12, 1981.

Paul L. Douglas, Atty. Gen., Marilyn B. Hutchinson, Asst. Atty. Gen. (argued), Lincoln, Neb., for appellant.

David J. Clegg, Western Nebraska Legal Services, Scottsbluff, Neb., for appellee.

Before LAY, Chief Judge, and STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

The state of Nebraska appeals from the district court's[1] January 20, 1981, decision which granted appellee Kenneth Hawkman's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] We affirm the district court's decision, but find it necessary to explicate portions of the district court's legal analysis.

## I. BACKGROUND

The district court, after reviewing the state court records and holding an evidentiary hearing, set forth the underlying factual circumstances as follows. On July 19,

---

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

2. The district court stayed execution of its order granting Hawkman's application for a writ of habeas corpus pending this appeal and admitted Hawkman to bail on a cash bond.

1976, Hawkman, a Sioux Indian who lived on the Rosebud, South Dakota Reservation and was then nineteen years old, was hitchhiking in the area of Valentine, Nebraska. Hawkman was accompanied by his friend Jesse Good Voice,[3] and both boys were given a ride by one Robert Pavlik. When Pavlik stopped his pickup truck to let Hawkman and Good Voice out, a struggle ensued between Pavlik and Hawkman. As a result of the struggle, Pavlik suffered a knife wound to his forearm and Hawkman was shot in his right shoulder and lung area. Shortly after the struggle ended, Hawkman, in critical condition, was taken to the Cherry County Hospital in Valentine, Nebraska. After his release from the hospital on approximately July 26, 1976, Hawkman was transported to the Cherry County Jail. Pavlik stated to police investigators that he shot Hawkman with a gun he carried in his pickup after Hawkman reached for the pickup's keys and attacked him with a knife. Two days after the incident, and while still in the Cherry County Hospital, Hawkman gave a statement to a Nebraska State Patrol Investigator[4] that Pavlik had given him a package of cigarettes that was in an unopened carton and that when the pickup stopped, Hawkman drew his knife to open the cigarette carton.[5] At that time, Hawkman stated to the investigator, Pavlik reached for a gun and the next thing Hawkman remembered was that he was outside the pickup and then shot by Pavlik. Hawkman also stated that just before Pavlik shot him he threw his knife to the ground and gave Pavlik a peace sign.

On July 21, 1976, Hawkman was charged in the Cherry County, Nebraska district court with four felony counts under Nebraska law: (1) assault with intent to rob; (2) stabbing with intent to wound and maim; (3) assault with intent to commit great bodily harm; and (4) attempt to steal an automobile. On July 28, 1976, John C. Coupland,[6] a Valentine, Nebraska attorney, was appointed to represent Hawkman. After a preliminary hearing was held on August 10, 1976, Hawkman was arraigned in the Cherry County district court on August 19, 1976. On Mr. Coupland's recommendation, Hawkman pleaded guilty to all four felony counts at the August 19, 1976, arraignment. On September 23, 1976, the state district court imposed sentences of five to fifteen years on each of the first three counts and one year on the fourth count, all of which to run concurrently.

After Hawkman was confined in the Nebraska State Penitentiary, he filed a pro se motion for a new trial and a request for appointment of counsel. Counsel was appointed and the motion for a new trial was denied by the Cherry County district court. The Nebraska Supreme Court affirmed, holding simply that Hawkman's motion was a nullity because it was inexcusably untimely. *State v. Hawkman*, 198 Neb. 578, 254 N.W.2d 90, 91–92 (1977). The court also held that the Cherry County district judge did not abuse his discretion in sentencing Hawkman. *Id.* at 92.

Hawkman subsequently filed a motion for state post-conviction relief which alleged he was denied effective assistance of counsel and that the multiple, four-count charges arising out of the same transaction constituted double jeopardy. The Cherry County district court denied relief after an evidentiary hearing and the Nebraska Su-

---

**3.** The district court indicated that Jesse Good Voice was Hawkman's friend, but the record also indicates that Good Voice is Hawkman's cousin.

**4.** The state court records indicate that Nebraska State Patrol Officer V. C. Omer interviewed Hawkman in the hospital on July 20 and 21, 1976. The state concedes that Hawkman's counsel was aware of, and had read, Officer Omer's written interview report.

**5.** We note parenthetically that one of the post-incident photographs taken by the state (marked as Exhibit 17) clearly shows a carton of cigarettes placed on the dashboard of Pavlik's pickup truck. The record reveals that Hawkman's counsel had seen the state's photographs but we find no indication in the record that Hawkman's counsel made any effort to corroborate or investigate Hawkman's version of the incident despite having seen the photograph just described.

**6.** Mr. Coupland is now deceased.

preme Court affirmed. *State v. Hawkman*, 201 Neb. 605, 271 N.W.2d 46 (1978).[7] The Nebraska Supreme Court found no error in the state district court's rejection of Hawkman's ineffective assistance of counsel contentions [8] and noted that the record did not "show any testimony bearing upon the question of what standard of performance should be expected of a lawyer with ordinary training and skill in the criminal law in his area, according to *State v. Leadinghorse*, [192 Neb. 485] * * * 222 N.W.2d 573 [, 577 (1974)]." *Id.* 271 N.W.2d at 47. The court also rejected Hawkman's double jeopardy contention and concluded that the sentence imposed did not constitute multiple punishment for a single transaction because the sentences were imposed to run concurrently. *Id.*

On June 21, 1979, Hawkman filed a habeas corpus petition in federal district court. The federal district court correctly held that Hawkman exhausted state remedies with respect to the issues raised in his federal habeas corpus application. After an evidentiary hearing, the district court filed an opinion in which it noted Hawkman's central contention was that "he was denied effective assistance of counsel in the proceedings leading to his [state court] guilty plea, conviction and sentencing and that he was prejudiced thereby in that he was unable to make an intelligent and informed choice among his alternative courses of action." The district court then quoted *DuPree v. United States*, 606 F.2d 829, 830–31 (8th Cir. 1979) (per curiam), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980), which provides:

> The standard for determining the adequacy of counsel is whether the trial counsel exercised "the customary skills

and diligence that a reasonably competent attorney would perform under similar circumstances." *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977). There is a presumption that counsel has rendered effective assistance. *Thomas v. Wyrick*, 535 F.2d 407, 413 (8th Cir.), *cert. denied*, 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). To overcome the presumption, appellant must show that: (1) there was a failure to perform an essential duty owed by the defense attorney to his client; and (2) that the failure prejudiced the defense. *McQueen v. Swenson*, 498 F.2d 207, 218 (8th Cir. 1974).

After applying these legal standards to the facts presented, the district court concluded that Hawkman was not rendered effective assistance of counsel for at least three reasons. First, the court concluded that Hawkman's attorney failed to adequately investigate the facts before advising Hawkman to plead guilty. Second, the court concluded that Hawkman's attorney failed to adequately and fairly apprise Hawkman of the elements of the charges filed, potential defenses, the risks of going to trial and the consequences of pleading guilty to four felony charges. Finally, the court concluded that Hawkman's attorney failed to initiate plea negotiations and advise Hawkman of the possibility of a plea bargain despite the similarity of the four charges levied against Hawkman. The court specifically ruled that these actions and inactions of counsel violated the constitutional counsel competence standard set forth in *DuPree, supra*, and concluded that Hawkman was prejudiced thereby.[9]

---

**7.** Of the seven-member panel which heard the appeal, three justices concurred in result only and Justice McCown dissented without published opinion.

**8.** In rejecting Hawkman's claims that he was afforded ineffective assistance of counsel, the Nebraska Supreme Court stated that Hawkman "disputed various portions of the testimony of his counsel. The trial court, having heard the testimony and observed the witnesses, resolved any conflicts in the testimony by its findings.

No error in such findings has been shown." *State v. Hawkman*, 201 Neb. 605, 271 N.W.2d 46, 47 (1978).

**9.** Because it granted Hawkman relief on his ineffective assistance of counsel claim, the federal district court did not reach Hawkman's claim that the state court sentences he received constituted unconstitutional multiple punishment for a single transaction. We also limit our discussion to the counsel effectiveness issue.

We agree that the three reasons enumerated by the district court warrant habeas corpus relief, but find it necessary to elaborate on the applicable legal principles and discuss each reason separately, especially the third, in order to avoid misunderstanding.

## II. DISCUSSION

### A. *The Federal Constitutional Standard of Minimum Counsel Competence*

 It is clear that a defendant pleading guilty to a felony charge has a federal constitutional right to the assistance of counsel. *Ford v. Parratt*, 638 F.2d 1115, 1117 (8th Cir. 1981). The right to counsel, guaranteed to federal defendants through the Sixth Amendment of the United States Constitution, is a fundamental right guaranteed to state defendants through the Due Process Clause of the Fourteenth Amendment. *McQueen v. Swenson, supra*, 498 F.2d at 213. A state defendant has a right not only to the timely appointment of counsel, but also to assistance of counsel whose quality of performance does not fall below a minimum level of effectiveness. *Ford v. Parratt, supra*, 638 F.2d at 1117.

 "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). *See also McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970). The right to effective assistance of counsel is based in the United States Constitution and, therefore, our inquiry of whether effective assistance of counsel was afforded in a particular case is governed by federal standards.

 In this case, the federal district court correctly set forth this circuit's legal standards for counsel effectiveness. We have repeatedly held that counsel fails to render the constitutionally required effective assistance when he does not exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances. *See, e.*

*g., Ford v. Parratt, supra*, 638 F.2d at 1117. However, "when trial counsel makes a choice of defenses as a matter of trial strategy, even if that choice proves to be ineffective, it does not without more sustain a finding of ineffective assistance of counsel." *Drake v. Wyrick*, 640 F.2d 912, 915 (8th Cir. 1981). In order to prevail on an ineffective assistance of counsel theory, a habeas petitioner must establish that: (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have performed under the same set of circumstances; and (2) that his lawyer's ineffectiveness prejudiced him. *Ford v. Parratt, supra*, 638 F.2d at 1117. After considering the allegations made and the proof adduced, federal judges must make a *legal judgment* as to whether the defendant was materially prejudiced in the defense of his case by the actions or inactions of his counsel. *Cox v. Wyrick*, 642 F.2d 222, 226 (8th Cir. 1981). *Accord United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977); *Crismon v. United States*, 510 F.2d 356, 358 (8th Cir. 1975). The failure of defense counsel to provide adequate assistance is a "unique form of constitutional error." *Thomas v. Wyrick*, 535 F.2d 407, 413 (8th Cir.), *cert. denied*, 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). We have previously determined *as a matter of law* that a habeas petitioner received ineffective assistance of counsel. *See Morrow v. Parratt*, 574 F.2d 411, 414 (8th Cir. 1978); *Rinehart v. Brewer*, 561 F.2d 126, 131–32, 133 (8th Cir. 1977). We will affirm a district court's finding that a habeas petitioner was not afforded effective assistance of counsel where the district court's findings of fact which underpin such a conclusion of law are not clearly erroneous. *Morrow v. Parratt, supra*, 574 F.2d at 414. *Accord Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981).

Appellant state of Nebraska argues that the federal district court ordered an evidentiary hearing in this case to determine whether the performance of Hawkman's

counsel was "at least as well as a lawyer with ordinary training and skill in the criminal law in his area,"[10] namely, the area of Valentine, Nebraska. In ordering the hearing, the district court stated, *inter alia*, "[s]ince in this case evidence regarding the standard of performance for an attorney was not developed at the state hearing, an evidentiary hearing is, therefore, appropriate." It appears to us that the district court convened the hearing simply to elicit opinions as to what actions a reasonably competent attorney would have taken on Hawkman's behalf. *See also* n.15 and accompanying text *infra*. It is true that all witnesses who testified at the federal hearing were from western Nebraska and specifically from Valentine or Scottsbluff. However, the federal district court: (1) correctly set forth the applicable constitutional standards of counsel competence in this circuit; (2) expressly stated in its opinion that an evidentiary hearing was held "concerning the standard of performance for an attorney with ordinary training and skill"; and (3) clearly did not apply the Nebraska standards of counsel effectiveness set forth in *State v. Leadinghorse, supra*, 222 N.W.2d at 577. If the *Leadinghorse* standards differed from the federal standards delineated in our opinions, they would, of course, not bind a federal district court.

■ We certainly presume that state courts will protect the federal constitutional rights of criminal defendants, but the federal courts need not defer to a state court's interpretation of federal law. *See Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745,

759, 9 L.Ed.2d 770 (1963);[11] *Wolfs v. Britton*, 509 F.2d 304, 308 (8th Cir. 1975).[12]

It has long been established, as to those constitutional issues which may properly be raised under [28 U.S.C.] § 2254, that even a single federal judge may overturn the judgment of the highest court of a State insofar as it deals with the application of the United States Constitution or laws to the facts in question.

*Sumner v. Mata,* 449 U.S. 539, 543, 101 S.Ct. 764, 767, 66 L.Ed.2d 722 (1981).

A habeas petitioner's contention that he was denied the effective assistance of counsel in his decision to enter a guilty plea "raises in the first instance questions of fact." *United States v. Cannon*, 553 F.2d 1052, 1056 (7th Cir.), *cert. denied sub nom.*, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977). However, the resolution of preliminary factual matters merely initiates the federal court's inquiry, *"for the precise question of whether a particular accused has been deprived of the effective assistance of counsel is ultimately an issue of law."* *Id.* at 1057 (emphasis added). 28 U.S.C. § 2254(d) establishes a "presumption of correctness" of *factual* determinations made by all state courts. *Sumner v. Mata, supra,* 101 S.Ct. at 769. Section 2254(d) "requires deference by federal courts to factual determinations of all state courts." *Id.* In *Sumner*, the Supreme Court held that a federal habeas court, if it overturns a state court factual finding, should include in its opinion granting the writ the reasoning which led it to conclude that any of the provisions of 28 U.S.C. § 2254(d) were appli-

---

**10.** In affirming the denial of the writ in this case, the Nebraska Supreme Court referred to this standard. *State v. Hawkman, supra,* 271 N.W.2d at 47, citing *State v. Leadinghorse,* 192 Neb. 485, 222 N.W.2d 573, 577 (1974).

**11.** The Supreme Court stated in *Townsend* as follows:

Although the [federal] district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the [federal] district judge's duty to apply the applicable federal law to the state court fact findings independently. The

state conclusions of law may not be given binding weight on [federal] habeas.
*Townsend v. Sain,* 372 U.S. at 318, 83 S.Ct. at 760.

**12.** *Wolfs* quoted from *West v. Louisiana,* 478 F.2d 1026, 1032 (5th Cir. 1973), *vacated and remanded on other grounds,* 510 F.2d 363 (1975) (en banc) (per curiam), as follows: "The obligation of the federal judge is . . . to apply the proper federal constitutional standards based on the underlying facts, although the conclusions drawn from the facts may differ from the state court's conclusions." *Wolfs v. Britton, supra,* 509 F.2d at 308 (footnote omitted).

cable. *Id.* at 771.[13] *See also Johnson v. Wyrick*, 653 F.2d 1234, 1236–37 (8th Cir. 1981) (*Sumner v. Mata* standards concerning section 2254(d) discussed); *Arnold v. Wyrick*, 646 F.2d 1225, 1227 n.7 (8th Cir. 1981); *Drake v. Wyrick, supra,* 640 F.2d at 914–15.

■ In this case, we previously rejected the state's contention that federal district court conducted an evidentiary hearing to determine what actions a reasonably competent attorney in the Valentine, Nebraska geographical area would have taken on Hawkman's behalf. The counsel effectiveness standards set forth above are federal constitutional requirements which do not vary from one geographical location to another.[14] Each and all factors bearing on counsel's performance and any resulting prejudice must be duly considered. *Thomas v. Wyrick, supra,* 535 F.2d at 412. In our

view, the federal district court conducted the evidentiary hearing to supplement the record[15] and to gain perspective of what actions a reasonably competent attorney anywhere would have taken on Hawkman's behalf. As a result, it was proper to hold an evidentiary hearing.

■ We have carefully reviewed all the state court records in this case and conclude that the district court did not disagree with or disregard any state court factual finding. Therefore, the court did not render its decision in violation of 28 U.S.C. § 2254(d) and the Supreme Court's teachings in *Sumner v. Mata, supra.* The federal district court here, after applying this circuit's counsel effectiveness standards to the facts presented, simply reached a different legal conclusion than did the Nebraska state courts. As we just stated, a federal court is free to reach a legal conclusion which is different

**13.** Justice Brennan's dissenting opinion in *Sumner v. Mata* stressed that although 28 U.S.C. § 2254(d) requires deference to state court *factual* findings, a federal court remains free to decide the constitutional significance of the case's facts. *Sumner v. Mata, supra,* 101 S.Ct. at 773–74 (Brennan, J., dissenting). Justice Brennan further emphasized that: (1) section 2254(d) does not detract from the well-established duty of federal courts to apply the applicable federal law to the state court findings independently; and (2) a federal court need not defer to the state court's interpretation of federal law.

**14.** We have never indicated that counsel effectiveness standards vary between different geographical areas. In *United States v. Easter,* 539 F.2d 663, 665 (8th Cir. 1976), we quoted *Johnson v. United States,* 506 F.2d 640, 646 (8th Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 659 (1975), which states:

A more appropriate nomenclature for the standard would be to test for the degree of competence prevailing among those licensed to practice before the bar. The standard would refer more precisely to the professional competence of one who has completed a long and arduous course of study for professional license, and who has acquired some experience in applying legal principles and conducting court trials.

This observation was also quoted in *Thomas v. Wyrick,* 535 F.2d 407, 413 n.6 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). *See also McQueen v. Swenson,* 498 F.2d 207, 215 n.11 (8th Cir. 1974) (quoting a state court's counsel effectiveness standard

which mandated inquiry into whether the attorney "exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law").

**15.** The federal district court admitted into evidence two police reports which, the state informs us, were not part of the record in the state post-conviction proceedings. The first report is a statement given by Ina Good Shield Hawk (Mrs. Thomas Hawk) on July 21, 1976, which reported her spotty eyewitness account of the shooting. Mrs. Hawk also reported that she had seen Hawkman and Jesse Good Voice at around 4:00 p.m. on the date of the incident and that Hawkman seemed "to be pretty intoxicated as he was staggering when walking." The second report is a statement given by Opie John Good Shield on July 21, 1976. Opie John Good Shield reported that his father was in Valentine, Nebraska, on the date of the incident and that Hawkman and Good Voice tried to flag down or stop his father. His father refused to stop for them "because he [the father] was afraid of them [Hawkman and Good Voice] as they were or seemed to be pretty intoxicated at the time and didn't want to be bothered by drunks." The record contains no explanation as to why these two reports were not included in the record for the state post-conviction proceedings. In our view, the discovery of this misplaced evidence further justified the holding of an evidentiary hearing in the federal district court. "New evidence justifies an evidentiary hearing in the federal court * * *." *Austin v. Swenson,* 522 F.2d 168, 170 (8th Cir. 1975). *See also id.* at 169 n.4.

**1168**

than one reached by the state courts; it is only when the federal court differs with state court factual findings that the provisions of 28 U.S.C. § 2254(d) apply.

Having discussed the nature of section 2254 review, we now consider whether the district court here properly concluded that Hawkman's counsel was ineffective in the three areas specified.

**B.** *Counsel's Failure to Investigate the Facts Before Advising Hawkman to Plead Guilty*

 The federal district court analyzed this aspect as follows:

As stated in *Morrow v. Parratt,* 574 F.2d 411, 413 (8th Cir. 1978) (citing *Benson v. United States,* 552 F.2d 223, 225 (8th Cir. 1977) [, *cert. denied,* 434 U.S. 851 [98 S.Ct. 164, 54 L.Ed.2d 120] (1977)]), "ordinarily a reasonably competent attorney will conduct an in-depth investigation of the case which includes an independent interviewing of the witnesses." According to the testimony of plaintiff's attorney at the state post-conviction hearing * * *, his investigation of the case was limited essentially to discussing the case with petitioner, securing and reviewing state investigation materials, cross-examining Pavlik at the preliminary hearing, and contacting the deputy sheriff who was called to the scene. Other than the alleged victim and the petitioner, there appeared to be three eyewitnesses to the incident in question: Jesse Good Voice (petitioner's companion), and Mr. and Mrs. Thomas Yellow Hawk, who were in a vehicle which came upon the scene. Petitioner's attorney did not independently contact or interview any of these witnesses. Although two days after the shooting and stabbing, petitioner had given an exonerating statement to police investigators, the testimony of petitioner's attorney was that the petitioner never made any professions of guilt or innocence to him and that throughout the time he represented petitioner, the petitioner maintained that he was drunk at the time of the incident and could re-

member little about what had happened. Under the circumstances as related by petitioner's attorney, then, it was particularly critical that the testimony of individuals other than petitioner be obtained in order to intelligently assess whether petitioner did commit the acts he was charged with and, if so, whether any defenses existed. The Court has no difficulty in finding that in failing to investigate the facts before advising petitioner to plead guilty to four felony counts, petitioner's attorney failed to perform an essential duty which a reasonably competent attorney would have performed under similar circumstances.

The district court held that Hawkman was prejudiced by his counsel's failure to personally interview witnesses. It found:

that the testimony of at least one witness would have been helpful to petitioner had he decided to stand trial. Mrs. Thomas Yellow Hawk, who with her husband was in a vehicle behind the truck driven by Pavlik, stated that when they came upon the stopped Pavlik truck, Good Voice was standing on the driver's side of the truck talking to Pavlik and that petitioner was in the vehicle on the passenger side. Mrs. Yellow Hawk further stated that Pavlik got out of the truck and "was trying to remove this Kenny Hawkman from the vehicle, but it seems like Kenny didn't want to get out. Finally Bob Pavelka [sic] got him out and I don't remember what happened but I heard a shot * * * and Kenny Hawkman fell down * * *." Mrs. Yellow Hawk also stated that she had seen petitioner and Good Voice earlier that day and that petitioner seemed "to be pretty intoxicated as he was staggering when walking."

Mrs. Yellow Hawk's testimony would have been abundantly helpful at trial for a number of reasons. It appears to at least raise the question of whether petitioner attacked Pavlik and as intoxication was being considered as a defense, it would be helpful in that respect. Moreover, Pavlik had testified at the preliminary hearing that petitioner had not appeared to have been drinking. Therefore

Mrs. Yellow Hawk's testimony could have been used for impeachment purposes as to Pavlik's credibility. The report of Mrs. Yellow Hawk's statement was not part of the initial report filed by police investigators and the respondent argues that petitioner's attorney was unaware of Mrs. Hawk's statement. From the initial police report, however, it is clear that Mr. and Mrs. Yellow Hawk were witnesses to the incident and that statements from them were expected to be forwarded at a later date. * * * The petitioner's attorney, therefore, had knowledge of the existence of these eyewitnesses and knew or should have known that a statement from Mrs. Yellow Hawk had been taken. The Court finds that petitioner has thus shown the existence of admissible evidence which could have been uncovered by reasonable investigation and which could have proved most helpful to the petitioner on cross-examination or in his case-in-chief, had the petitioner gone to trial. The Court is unable to declare that the omission of such evidence was harmless error beyond a reasonable doubt and, therefore, concludes that the petitioner was prejudiced by his attorney's failure to investigate and to interview witnesses. *See Thomas v. Wyrick, supra,* 535 F.2d at 414–17; *McQueen v. Swenson,* 498 F.2d 207, 218–20 (8th Cir. 1974).

We affirm the district court's thorough factual findings and legal conclusions on this issue. We recently reemphasized that a reasonably competent attorney will ordinarily conduct an in-depth investigation of the case which includes an independent interviewing of witnesses. *Ford v. Parratt, supra,* 638 F.2d at 1117. We explained in *Ford* that:

> when an unsubstantiated issue is deemed by both counsel and client to be significant enough to trigger the decision to plead guilty, then there arises a duty on the part of the defense counsel to obtain the specifics surrounding the key factual issue. Such a duty necessarily demands thorough investigation. We have long required that counsel be afforded the opportunity and in fact "make such *preparations for the arraignment* and trial as the facts of the case fairly demand * *."

*Id.* at 1118 (emphasis in original) (citations omitted). In the context of an arraignment hearing where the defendant enters a guilty plea, the issue of prejudice centers on whether the attorney's failure to competently investigate any material facts prejudiced the defendant's ability to make an intelligent and voluntary plea of guilty. *Id.*

We agree that for the reasons stated by the district court, Hawkman's counsel's failure to interview Jesse Good Voice and Mr. and Mrs. Yellow Hawk constituted ineffective assistance of counsel under the circumstances of this case. We also agree with the district court that Hawkman was prejudiced thereby.

C. *Counsel's Failure to Adequately and Fairly Apprise Hawkman of the Elements of the Charges Filed, Potential Defenses, Trial Risks and the Consequences of Guilty Pleas to Four Felony Charges*

The federal district court concluded that Hawkman's youthful age[16] and the cultural differences which existed between Hawkman and his counsel raised a stringent duty on counsel to make certain that Hawkman fully understood the consequences of a guilty plea and the available alternative courses of action.[17] After the court extensively quoted from counsel's testimony at the state post-conviction hearing, it concluded that Hawkman's

> attorney was careful to advise the petitioner concerning all of the hazards of a jury trial and all of the advantages of a plea of guilty, but the record does not show that petitioner was adequately advised of the potential adverse consequences of a plea to four felony charges,

---

**16.** Hawkman was nineteen at the time he pleaded guilty.

**17.** In support of that conclusion, the district court correctly relied upon *Rinehart v. Brewer,* 561 F.2d 126, 132 (8th Cir. 1977).

his right to have the case tried to a judge without a jury, or of the procedures available to insure a fair trial, such as a motion for change of venue or a motion to exclude potentially inflammatory evidence. Nor does the record show that petitioner's attorney advised him of the possibility of pleading self-defense, as initially raised by petitioner's statement to the police investigators. Additionally, the record is unclear as to whether the petitioner's attorney ever discussed with petitioner the elements of each of the crimes charged and the proof required of the state to convict petitioner of each of the charges. * * * Under all of the circumstances, the Court finds that petitioner's attorney failed to adequately and fairly apprise petitioner of the probable consequences of a guilty plea to four felony charges and of the alternative courses of action available to him. Petitioner was prejudiced by his attorney's failure to adequately advise him because petitioner was unable to make an intelligent and informed decision to waive his right to trial and to enter a plea of guilty to all four charges.

■ We agree. "When a defendant pleads guilty on the advice of counsel, the attorney has the duty to advise the defendant of the available options and possible consequences." *Beckham v. Wainwright, supra,* 639 F.2d at 267 (citing *Brady v. United States,* 397 U.S. 742, 756, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970)). A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences of entering a guilty plea and of the feasible options. *United States v. Cannon, supra,* 553 F.2d at 1056.[18] To prove that counsel was ineffective, the habeas petitioner must demonstrate that the

advice was not within the range of competence demanded of attorneys in criminal cases. *Beckham v. Wainwright, supra,* 639 F.2d at 267 (citing *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973)). Here, the state court records amply support the federal district court's legal conclusions that Hawkman's counsel was ineffective and that counsel's ineffectiveness prejudiced Hawkman.

### D. Counsel's Failure to Initiate Plea Bargain Negotiations

■ As its final reason for granting habeas corpus relief, the federal district court concluded that Hawkman

was not rendered effective assistance of counsel for the reason that petitioner's attorney made no attempt to initiate a plea bargain and never advised petitioner of the possibility of a plea bargain, considering the similarity of the four charges filed against the petitioner. According to the unanimous testimony of the expert witnesses who testified at the [federal district court] evidentiary hearing, a reasonably competent attorney under the circumstances of this case would have at least attempted to negotiate a plea bargain or agreement with the county attorney. When questioned by the judge presiding at the arraignment regarding the similarity of the charges against the petitioner, petitioner's counsel stated that "I suppose I could try to plea bargain, but I don't think the court would overlook the significance of the entire ball of wax." Regardless of the sentence ultimately imposed by a court, however, conviction in itself may constitute prejudice. In the instant case the court finds that the petitioner was prejudiced by counsel's failure to seek a plea agreement in that petitioner was convicted of four felony charges at least some of which were potentially subject to a motion to elect had the petitioner gone to trial, as recognized by the

---

**18.** In the guilty plea context, a lawyer need not give wholly accurate advice in order to render effective assistance; he need not correctly predict the admissibility of evidence or anticipate future judicial holdings. His ad-

vice, however, must be "within the range of competence demanded of attorneys in criminal cases."
*United States v. Cannon,* 553 F.2d 1052, 1057 (7th Cir.) (footnote omitted) (citation omitted).

Nebraska Supreme Court in *State v. Hawkman,* 201 Neb. 605, 607, 271 N.W.2d 46, 47 (1978).

We agree that, under the facts of this case, counsel's failure to initiate plea negotiations concerning the duplicitous felony counts constituted ineffective assistance of counsel which prejudiced Hawkman. However, we do not hold that defense counsel always has a duty to initiate plea bargaining negotiations.

The legal inquiry into whether counsel rendered effective assistance necessarily encompasses consideration of many relevant factors. Counsel's concern in representing an accused in a criminal prosecution is the faithful representation of his client's interest; "such representation frequently involves highly practical considerations as well as specialized knowledge of the law." *Tollett v. Henderson, supra,* 411 U.S. at 268, 93 S.Ct. at 1608. In *Tollett,* the Supreme Court recognized that a "prospect of plea bargaining," among other things, is a consideration that "might well suggest the advisability of a guilty plea * * *." *Id.* at 268, 93 S.Ct. at 1608. However, in order to warrant federal habeas corpus relief, a petitioner must establish that his attorney's advice to plead guilty without having made inquiry into a particular consideration such as plea bargaining rendered the attorney's advice outside the range of competence demanded of attorneys in criminal cases. *Id.*

In this case, counsel's failure to consider the possibility of plea negotiations despite the patently duplicitous nature of the four felony counts and despite having that possibility pointed out by the state court sentencing judge constituted ineffective assistance of counsel which prejudiced Hawkman. We accordingly affirm the district court's findings on this aspect of the case.

### III. CONCLUSION

We affirm the district court's January 20, 1981, order granting Hawkman's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The state may, if it chooses to do so, retry Hawkman on the charges involved within a reasonable time to be determined by the district court.

Affirmed.