Larry J. WINFREY, Plaintiff-Appellant,

v.

Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, Defendant-Appellee.

No. 80-3048.

United States Court of Appeals, Fifth Circuit.*

Unit A

Dec. 28, 1981.

Rehearing Denied Jan. 29, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

James J. O'Connor, New Orleans, La. (Court-appointed), for plaintiff-appellant.

J. Kevin McNary, Asst. Dist. Atty., New Orleans, La., for defendant-appellee.

Before THORNBERRY, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Claiming ineffective assistance of counsel and an unconstitutionally disproportionate sentence, Larry J. Winfrey seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. We affirm the district court's denial of his application.

Winfrey was convicted in state court of possession of heroin with intent to distribute and sentenced to life imprisonment as mandated by the Louisiana statute, La.R.S. 40:966. A jointly tried co-defendant was convicted of possession. Winfrey's conviction was affirmed on direct appeal by the

Louisiana Supreme Court, 359 So.2d 73 (La. 1978), and his application for state habeas relief was denied.

### The Facts

On the night of August 8, 1975, two New Orleans police officers patrolling Claiborne Avenue observed an automobile traveling without any lights. They stopped the vehicle, intending to issue a warning traffic citation. A spotlight was directed on the vehicle and as they approached the officers lighted the interior with flashlights. Winfrey, who was driving, and co-defendant George Clark, on the passenger side, were seen hurriedly placing small bits of tinfoil in their mouths. The officers prevented Winfrey from swallowing what proved to be packets of heroin. In all, 22 packets of 16% heroin were recovered, together with a roll of tinfoil and a bundle of money which had been hastily thrown into the rear of the vehicle while Winfrey and Clark were being removed from the vehicle. Winfrey defended the charge of possession with intent to distribute by explaining that he was an addict and intended to use the heroin personally. The evidence reflects that the heroin was approximately three times the usual "street strength;" cutting or dilution was clearly indicated.

Winfrey and Clark, tried jointly, were represented by the same retained counsel. In the trial court Winfrey maintained that his counsel was ineffective, supporting the charge with fifteen alleged examples of incompetence. He also complained that the mandatory sentence of life imprisonment constitutes cruel and unusual punishment in violation of the eighth and fourteenth amendments. On appeal he urges for the first time ineffective assistance of counsel based on a conflict of interest resulting from the joint representation.

### Ineffective Assistance

Winfrey's pleadings contain a litany of charges of ineffective assistance of counsel. The magistrate and district judge examined the charges and found each devoid of merit. No hearing was conducted; the

proceedings a quo consisted of a review of the state court record, a procedure we find appropriate in this instance because the record before the district court was sufficient for a proper examination of Winfrey's claims. *Flores v. Estelle*, 578 F.2d 80 (5th Cir. 1978), *cert. denied*, 440 U.S. 923, 99 S.Ct. 1253, 59 L.Ed.2d 477 (1979).

■ On appeal Winfrey focuses on only one of the multiple asserted bases for the claim of ineffective assistance of counsel. Before addressing that claim specifically we reiterate that the constitutional right to effective assistance of counsel does not entitle one to the most competent counsel available, or to errorless counsel. Trial counsel are not to be critically judged with the benefit of hindsight. The constitution guarantees counsel reasonably likely to render and reasonably rendering effective assistance. *Kemp v. Leggett*, 635 F.2d 453 (5th Cir. 1981); *Jones v. Estelle*, 632 F.2d 490 (5th Cir. 1980), *cert. denied,* 451 U.S. 916, 101 S.Ct. 1992, 68 L.Ed.2d 307 (1981); *Hill v. Wainwright*, 617 F.2d 375 (5th Cir. 1980).

■ The claimed error of counsel which Winfrey urges on appeal falls "within the amorphous zone known as 'trial strategy' or 'judgment calls.'" *Jones v. Estelle*, 632 F.2d at 492. In examining this complaint we "decline to evaluate the propriety of trial counsel's actions with the aid of the refractive correction of hindsight." 632 F.2d at 492.

■ Winfrey's grievance, stripped to its essentials, is that his counsel opted to have him testify and advised him to testify truthfully. The latter is absolutely required of any attorney. The former is frequently one of the most difficult and vexatious decisions a trial attorney must make. The examination of that decision with the visual acuity inherent in hindsight is grossly inappropriate. That examination can only be made by reconstructing, to the extent possible, the situation confronting trial counsel at the time of the decision. Only then can the reasonableness of the decision be tested fairly.

Winfrey's counsel was confronted with a situation in which his client, an addict, was arrested while attempting to swallow packets of heroin. Many other packets were recovered from the vehicle, along with tinfoil and a bundle of cash. It was not unreasonable for trial counsel to conclude that an explanation had to be given to the jury. Counsel advised his client to testify about the events leading up to his arrest, in furthering his defense of possession for personal consumption by an addict. The following colloquy then occurred. On direct examination Winfrey was asked:

Q. After you bought the heroin what did you do?

A. I left Washington Street and proceeded in a uptown direction on Clairborne Avenue and George Clark lived on Clairborne Avenue—Street and I stopped and asked him to give me a ride home and he agreed to give me a ride home.

Q. You said you bought twenty-five papers, what happened to the other two?

A. As soon as I scored, I ran into a friend and we did some up.

Q. Where is his house?

A. On Magazine Street.

Q. After you went to his house and did some heroin, where did you go?

A. To George's house.

The prosecutor, recognizing the responses constituted an admission of distribution, underscored the point on cross-examination:

Q. O.K. Now, you said that there were twenty-two papers that were—that you had shot up the three papers?

A. Right.

Q. With who? Your friend?

A. Right.

. . . .

Q. Did you know that that's distribution? Did you give some of those papers to your friend?

A. No.

. . . .

Q. Well, where did he get them? Where did he get his?

A.  I gave him some of mine.

Q.  Did you know that that's distribution? When you gave him those papers, did you know that you were distributing heroin?

Winfrey argues that his counsel caused him to blunder into admitting distribution. The adverse impact of this testimony might seem apparent from the verdict of guilty. However, we do not measure the constitutional guarantee of effective assistance of counsel by that sole gauge. The alternatives counsel faced must be considered, and then from the perspective of one standing in the mocassins of trial counsel. In *Beckham v. Wainwright*, 639 F.2d 262 (5th Cir. 1981), we noted the defendant must demonstrate that the advice was not within the range of competence demanded of attorneys in criminal cases. Winfrey points to his conviction as proof that his counsel acted incompetently. We are not persuaded by this argument.

We view the challenged decision by counsel as part of the effort to present his client's addiction for the jury's consideration. The decision must be evaluated in light of the defense—possession for personal use only. It is manifest that "tactical decisions do not constitute ineffective assistance simply because in retrospect it is apparent that counsel chose the wrong course." *Beckham v. Wainwright*, 639 F.2d at 265 (*citing Akridge v. Hopper*, 545 F.2d 457 (5th Cir.), *cert. denied*, 431 U.S. 941, 97 S.Ct. 2657, 53 L.Ed.2d 260 (1977)). The decision by Winfrey's counsel to advise him to testify, and perforce to testify truthfully, was not such an error as to justify our classification of his representation as constitutionally defective. We decline to do so.

### Conflict of Interest

For the first time on appeal, Winfrey contends that his counsel could not properly represent him because of the simultaneous representation of his co-defendant Clark. Arguing that his testimony was adverse to his interest and in Clark's best interest, Winfrey contends his counsel had a conflict and maintains that under our holdings in *Zuck v. Alabama*, 588 F.2d 436 (5th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), and *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978), his trial was fundamentally unfair.

Because this issue has never been presented in state court, state remedies have not been exhausted. "For a claim to be exhausted [under 28 U.S.C. § 2254], the state court system must have been apprised of the facts and legal theory upon which the petitioner bases his assertion." *Galtieri v. Wainwright*, 582 F.2d 348, 353 (5th Cir. 1978) (en banc) (*citing Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). Comity provides the rationale for this requirement. As the Supreme Court stated in *Fay v. Noia*, 372 U.S. 391, 419, 83 S.Ct. 822, 838, 9 L.Ed.2d 837 (1963), "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *See also Terrebonne v. Blackburn*, 646 F.2d 997, 1000 (5th Cir. 1981) (en banc).

Because Winfrey's charge that counsel had a conflict of interest has not been exhausted in state court, we cannot consider it. Winfrey's contention that a conflict existed and he was denied a fair trial, *see Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) and *Johnson v. Hopper*, 639 F.2d 236 (5th Cir. 1981), is not now properly before us. We express no opinion thereon.

### Disproportionality of Sentence

Winfrey argues that the imposition of a mandatory life sentence was constitutionally infirm. This argument, once considered meritorious by some, cannot now be viewed as legally adequate. The decisions by the Supreme Court in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and by this court sitting en banc in *Terrebonne v. Blackburn*, 646 F.2d 997 (5th Cir. 1981), direct otherwise.

Finding no merit in any complaint properly before us on appeal, we AFFIRM the district court in all respects.