STATE OF NEBRASKA, APPELLEE, V. VICTOR LEADINGHORSE, APPELLANT.

222 N. W. 2d 573

Filed October 24, 1974. No. 39434.

Alan Saltzman, for appellant.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This is an appeal from the refusal of the District Court to grant a post conviction motion to vacate defendant's judgment and sentence. Defendant was convicted on a plea of guilty to sodomy and was sentenced to 15 years imprisonment in the Nebraska Penal and Correctional Complex. Judgment was affirmed on direct appeal. State v. Leadinghorse (1971), 187 Neb. 386,

191 N. W. 2d 440. The trial court, after a hearing for that purpose, determined that no evidentiary hearing was required and denied ·defendant's motion to vacate. We affirm.

The sole issue herein is the refusal of the trial court to grant an evidentiary hearing. An examination of defendant's motion indicates that it is premised on the following allegations: (1) His sentence to 15 years imprisonment is cruel and unusual punishment and in violation of the United States and Nebraska Constitutions; (2) his sentence is unconstitutional since its basis is predicated on a presentence psychiatric report; (3) he was denied effective assistance of counsel; (4) his plea of guilty was involuntary and unintelligent; and (5) he was in effect sentenced for charges which were dropped pursuant to a plea bargain.

An evidentiary hearing is not always necessary in order to dismiss a post conviction motion, however, such a hearing is usually advisable to avoid protracted litigation. We said in State v. Reyes (1974), *ante* p. 153, 219 N. W. 2d 238: "The Post Conviction Act specifically authorizes the trial court to examine the files and records and to determine whether or not a prisoner may be entitled to the relief he seeks. If the trial court finds from such examination that the proceeding is without foundation, an evidentiary hearing may be properly denied." Accordingly, we consider defendant's motion in the light of the files and records herein.

Defendant alleges that his sentence to 15 years imprisonment constitutes cruel and unusual punishment. The maximum penalty for the offense for which he was committed is 20 years. § 28-919, R. R. S. 1943. The severity of defendant's sentence was specifically raised in his direct appeal. It was held not to be excessive under the circumstances and in light of defendant's previous record (State v. Leadinghorse (1971), 187 Neb. 386, 191 N. W. 2d 440). Defendant seeks to avoid our rule that

a defendant who has appealed a conviction cannot secure a second review of the identical proposition examined in that appeal by resorting to a post conviction procedure, by framing the question in a constitutional context.

He bases his present claim on the premise that the act of sodomy was consensual. The opinion on the direct appeal states: "The record would indicate that the offense was forcefully perpetrated on a teen-age boy while both parties were confined in the Buffalo County jail. Appellant at the time was waiting trial on two separate felony offenses, one of which involved assault on a 12-year-old boy."

Regardless of its severity, a sentence of imprisonment which is within the limits of a valid statute ordinarily is not a cruel and unusual punishment in the constitutional sense. This rule is universal and well established, as attested by the collection of state and federal cases in 33 A. L. R. 3d, § 5, p. 359. We are not constrained to hold that a sentence within the limits of the sodomy statute constitutes cruel and unusual punishment.

Defendant's second attack is directed to the presentence hearing and particularly to a psychiatric evaluation furnished a short time prior to the commission of the act for which defendant was convicted and sentenced. The evaluation was made on September 22, 1970, at a time when defendant was in custody on two other felony charges. On January 4, 1971, defendant was charged with two counts of sodomy. The guilty plea was to one of those counts. We have examined the report of the psychiatrist. While he viewed the defendant as having an anti-social personality disorder with alcoholism, and emphasized that he considered him homicidal, we consider the report well within the range specified in Williams v. New York (1949), 337 U. S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337, for consideration at a sentencing hearing.

Defendant implies that he was entitled to a presentence report in writing prepared after conviction. This is now required by section 29-2261, R. S. Supp., 1972. However,

this statute did not become effective until August 27, 1971. Defendant's sentence was imposed on January 12, 1971, or before the adoption of the statute in question. Actually, the court had an F.B.I. report and files of defendant's past offenses before him. These were given to the defendant to read to see if there were any mistakes or exceptions or corrections to be called to the court's attention. The psychiatric reports were also marked as exhibits at the presentence hearing, and the court was told by defendant's counsel that he had read both reports.

In State v. Birdwell (1972), 188 Neb. 116, 195 N. W. 2d 502, we stated: "The presentence reports could be relevant only to the sentences imposed upon the defendants. Sentences imposed within statutory limits furnish no basis for post conviction relief."

Defendant's next claim, ineffective assistance of counsel, presents a much closer question. This is premised on defendant's allegation that his counsel failed to establish at the hearing that the act of sodomy was consensual; that he failed to ask the court to take judicial notice of the high incidence of homosexual activity in jails; that he failed to challenge the psychiatric reports or to request the court to order additional psychological testing and interviewing before determining the sentence; that he failed to advise defendant he was likely to receive a sentence near the statutory maximum; that he failed to insure the plea was voluntary and intelligent; that he failed to make a motion for reduction of sentence; and that he misrepresented his conversation with defendant's mother.

Defendant cites State v. Reyes (1974), *ante* p. 153, 219 N. W. 2d 238, in support of his contention that he should have been granted a hearing on his allegation of ineffective assistance of counsel. This is hard to understand since ineffective assistance of counsel was alleged in that case and the trial court denied the motion without an evidentiary hearing, and this court affirmed. In

Reyes we held that in evaluating the issue of ineffective assistance of counsel, the assistance must be so inept as to jeopardize the rights of the defendant and shock the court by its inadequacy. Reyes was decided subsequent to defendant's sentence and is controlling herein. Our present test would be that trial counsel perform at least as well as a lawyer with ordinary training and skill in the criminal law in his area, and that he conscientiously protect the interests of his client. We find that defendant's trial counsel meets this test.

As to defendant's present claim the sodomy was consensual, the record clearly indicated otherwise. On the record, the failure of trial counsel to call the victim to the presentence hearing in an attempt to establish consent by the teenage boy cannot be unduly criticized. Undoubtedly it would have created problems on the acceptance of the plea bargain, and would most likely have further confirmed the use of force.

Ineffective assistance of counsel is charged because of failure to challenge the psychiatric reports, or to ask for further testing. Exactly how counsel was to challenge the reports is not stated, nor is there any allegation as to what might be achieved by further testing. The report stated that defendant was competent to stand trial and to participate in his own defense, which probably was the reason for requesting the evaluation.

The claim that counsel's failure to tell defendant he was likely to receive a maximum sentence shows counsel was ineffective is absurd on the record. The court had told him he could be sentenced up to 20 years. He had a previous felony record, and had spent time in penal institutions.

A motion to reduce sentence would have been an exercise in futility. Counsel did prosecute an appeal in an attempt to reduce the sentence.

Assuming, as we must do, that defendant's counsel told him his mother wanted him to plead guilty, should his motion to vacate be sustained? If defendant were an

inexperienced teenage boy who would be affected by his mother's opinion, this misrepresentation of fact would be a serious dereliction of duty. However, defendant was at least 26 years old at the time of his plea. He had spent several of his previous years in a training school or penal institution. To believe that a man of his age and experience would be induced to plead guilty by a purported message from his mother would be too much of a strain on credulity.

The other allegations of ineffectiveness of counsel have either been answered heretofore or are frivolous. Defendant had two other pending felony charges and a very bad past record. Defense counsel worked out a plea bargain which resulted in the dismissal of other felony charges. Defendant readily agreed to this procedure. On the basis of the record, defendant received effective assistance of counsel.

Defendant's fourth allegation is that his plea of guilty was involuntary and unintelligent. The court ascertained that the defendant had been represented by counsel in the other cases; that he had had a sufficient time to consult with counsel; the nature of the charge and the penalty were explained to the defendant; and he was advised of his right to a jury trial and the fact that the State would provide for the cost of his defense. He was told by the court that he could be sentenced up to 20 years, and was asked if anyone had promised him any amount less than that. He was asked if by pleading guilty he meant that he had done the act for which he was being prosecuted, and he answered "Yes." His answer indicated he knew the penalty and no promise had been made.

Defendant alleges that his jailors teased him with food and made derogatory remarks about his ethnic background and his value as a person, which contributed to his plea of guilty. No suggestion is made that his jailors were coercing him to plead guilty by these tactics. If the charges are true, the conduct of the jailors was reprehensible and should have been brought to the attention

of the trial court, but that cannot at this late date be considered sufficient to vacate the judgment and sentence.

Defendant alleges his mental state was so greatly impaired by his reaction to drug withdrawal as to preclude any guilty plea from being voluntary and intelligent. As previously noted, the record discloses a psychiatric evaluation in September while defendant was being held on two other felony charges. He was subsequently arraigned and trial set on those charges. He was continuously in custody from September until his plea on January 12, 1971, which would indicate the frivolousness of his contention. On the record it cannot be said that the defendant's plea was coerced in any manner. We agree with the trial court the record demonstrates it was not involuntary and unintelligent.

Defendant's last allegation is that he was sentenced for charges which were dropped as a result of his plea bargain. The question of the excessiveness of defendant's sentence was specifically reviewed by this court in his direct appeal. We there found that the trial judge did not abuse his discretion in the sentence meted out to defendant. The question of whether or not the trial judge considered the other two felonies is locked within his own mind. The same trial judge presided at the proceeding on the motion to vacate. Defendant's record was bad. The trial judge was fully aware of it. Regardless of changing moral standards, if a maximum penalty is ever justified, as we believe it is, we cannot say on the record that the trial judge abused his discretion in the sentence imposed on the defendant.

For the reasons stated, we find that the trial judge did not abuse his discretion in refusing to grant an evidentiary hearing on the motion to vacate the judgment and sentence. The judgment is affirmed.

AFFIRMED.