STATE OF NEBRASKA, APPELLEE, V. LUTHERN P. WATERMAN, APPELLANT.

340 N.W.2d 438

Filed November 28, 1983. No. 83-233.

Christie Dibbern, for appellant, and, on brief, Waterman pro se.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

This is an appeal from an order of the District Court denying the defendant's motion for post conviction relief without holding a hearing.

On September 3, 1981, while represented by counsel, the defendant, Luthern P. Waterman, entered a plea to and was found guilty of the May 22, 1981, Class III felony offense of second degree sexual assault, a violation of Neb. Rev. Stat. § 28-320 (Reissue 1979). The plea was entered as a part of a plea bargain which substituted this charge for the original charge of first degree sexual assault, a Class II felony.

Following a presentence investigation, the defendant was ordered committed to the Department of Correctional Services for a 90-day evaluation under the provisions of Neb. Rev. Stat. § 83-1,105(3) (Reissue 1981). After receipt of that evaluation the District Court directed that the defendant undergo an evaluation under Neb. Rev. Stat. § 29-2912 (Reissue 1979) to determine whether he was a mentally-disordered sex offender.

A hearing was then held, at which the reports of the clinical psychologist and psychiatrist who had been appointed by the court to examine the defendant were received in evidence. The court made the finding that the defendant was not a mentally-

disordered sex offender, and after a rather extensive sentencing hearing ordered that the defendant be confined in an institution under the control of the Nebraska Department of Correctional Services for a term of 3 to 5 years, with credit for 205 days of jail time.

Defendant's motion to vacate sentence contained a number of allegations, including: That the arresting officers did not advise him of his *Miranda* rights; that the county authorities denied him the right to make telephone calls; that he was denied the right by county authorities to contact an attorney for at least 14 days; that he was physically abused by the sheriff's deputies upon his arrest and initial incarceration; that the conditions in the jail in which he was kept awaiting trial were bad; that, although an attorney was appointed to represent him and he was subjected to three mental examinations, his appointed attorney made no attempt to converse with him; that the evidence was insufficient to convict him; that at the time he entered a plea of guilty he had suffered a complete nervous breakdown and was not aware of what was going on; and that in some way he was forced by his attorney and the county attorney to plead guilty, because he was told that if he did not plead guilty he would be sentenced to a term of 15 years, but that if he did plead guilty he would receive probation.

On March 16, 1983, the trial court entered an order stating in effect that after a review of the motions, files, and records in the case, the motion to vacate sentence was without merit and should be overruled. As a part of the journal entry denying the motion, the court found that the defendant was adequately advised of his rights, that the defendant specifically denied that he had any complaints against law enforcement officers, that he thought his attorney had done everything for him he could do, and that whatever complaints the defendant had concerning his treatment by any officials of the county in which he

was first arrested may form the basis for a civil rights action, but they afforded no basis for setting aside the conviction and sentence in this case.

Although the defendant filed his brief pro se, counsel appeared and argued in his behalf in this court. In that brief, defendant assigns as error the overruling of his motion to vacate sentence without an evidentiary hearing, but argues only the improper inducement affecting his plea and his incompetency to enter a plea.

In deciding this appeal we are governed by two basic principles. In ruling on an application for post conviction relief, if the trial court finds from an examination of the files and records in the case that the proceeding is without foundation, an evidentiary hearing may properly be denied. *State v. Leadinghorse*, 192 Neb. 485, 222 N.W.2d 573 (1974). One seeking post conviction relief has the burden of establishing the basis for such relief, and the findings of the District Court in denying relief will not be disturbed on appeal unless they are clearly erroneous. *State v. Paulson*, 211 Neb. 711, 320 N.W.2d 115 (1982).

The arraignment proceedings were comprehensive, fair, and readily intelligible. The trial court fully informed the defendant of all his rights and of the fact that by pleading guilty he was waiving those rights. As to the two factors argued in defendant's brief, the record discloses that he told the court he had had sufficient time to confer with his attorney, that no "physical force, threats or third degree" were used to make him plead guilty, that no promises were made other than the agreement to reduce the charge from first to second degree, and that no promises were made as to what the court would do by way of sentencing.

The defendant recited the facts constituting the crime, which agreed with those disclosed by the prosecution. Other than saying that while in jail he was threatened "to [be] put in deadlock" because the authorities thought he needed mental help, he

had no complaint against the sheriff. He agreed that the threat to be put in deadlock had nothing to do with his entering of the plea of guilty. He also said he was satisfied with the assistance of counsel, that counsel had done everything for him that counsel could do, and that the county attorney had treated him fairly.

Defendant's trial counsel, who was not the same attorney appearing in this court for the defendant, advised the court that the defendant felt he needed psychiatric and psychological counseling; that he previously had been a patient at the Norfolk Regional Center and had received a report that he was not suffering from any psychosis or neurosis but did suffer from severe emotional stress, but was not prevented from assisting in his defense. Counsel gave as his opinion that the defendant knew what he was doing at the time he entered his plea and that the plea was voluntary.

Included within the files and records available to the district judge was the presentence investigation report, which included a report of an examination and observation of the defendant by R. A. Cutshall, M.D., of the Norfolk Regional Center, made during July of 1981; a classification study of defendant, performed by the Department of Correctional Services; and independent evaluations done in December of 1981 by Dr. Cutshall and William J. Price, Ph.D., clinical psychologist at the Norfolk Regional Center.

According to the presentence investigator, "Mr. Waterman has been visually nervous, shakey [sic], slobbering, etc. during court appearances." The report of that investigator also discloses that the defendant went to the Pender, Nebraska, hospital for 10 days, commencing September 9, 1981, "reportedly with a nervous breakdown." The July 23, 1981, report of Dr. Cutshall, included within the presentence report, indicates that the defendant was admitted to the Norfolk Regional Center on July 9, 1981, as a voluntary admission, at the recommendation of his

attorney, since he had a previous history of mental illness.

Dr. Cutshall refers to reports from a September 1980 hospitalization in Cherokee, Iowa, following an attempt at suicide. However, those reports disclosed no depression per se justifying antidepressant medication. Dr. Cutshall could find no evidence of schizophrenia, only some paranoid "ideation," but not of pathological amounts. He found that the defendant expressed a great deal of anxiety and depression, and diagnosed him as avoidant personality disorder, but could find no reason why he should not be returned to the community, with possibly some psychological support as an outpatient.

The classification study done by the Department of Correctional Services indicated that defendant functioned within the dull-normal range of intellectual functioning. It was suggested that he displays rather typical symptoms of hypochondria, and is described as one who "appears to be a rather passive, dependant [sic] individual who expresses anxiety and depression a good share of the time."

Dr. Cutshall's December report and evaluation, in concluding that the defendant did not fulfill the criteria for a mentally-disordered sex offender, expresses the opinion that he does not suffer from a mental disorder per se, except for the possibility of his alcohol abuse, which the defendant had given as an excuse for the commission of the crime.

Finally, Dr. Price, the clinical psychologist, pointed out that the most striking aspect of the defendant's clinical presentation was his rather obvious anxiety related to a sense of uncertainty over how the court might act with regard to sentencing. However, it was his opinion that this distress did not interfere with his ability to relate rationally with the examiner. Dr. Price concluded that the defendant was not judged to be pathological in a psychological sense, in that he was not psychotic, neurotic, or

functioning under the influence of an organic brain syndrome.

If the defendant's only claim was that he was forced to plead guilty because of threats or inducements made or held out to him by his own attorney or the county attorney, we would have little trouble affirming the action of the District Court. The defendant was thoroughly questioned by the trial judge on this very subject, and denied that any threats or inducements were made, or that he was told what sentence might be imposed upon him.

A defendant who is mentally competent can no more assume one posture at the time of arraignment and then change positions afterwards to meet the exigencies of the situation than he can withhold facts from his attorney, and thereby experiment with one defense, and when that fails him, invoke the aid of the law to experiment with another which was fully known to him at the time. *State v. Hurley*, 207 Neb. 321, 299 N.W.2d 152 (1980).

However, defendant's claim that his plea was involuntary because he was incompetent at the time due to a nervous breakdown presents a different problem. This contention finds some support in the record as detailed above, and, we believe, at least presents a factual dispute. "An evidentiary hearing must be granted on a petition for post conviction relief when the facts alleged would justify relief, if true, or when a factual dispute arises as to whether a constitutional right is being denied." *State v. Paulson*, 211 Neb. 711, 714, 320 N.W.2d 115, 118 (1982).

Especially appropriate here is that language from *State v. Leadinghorse*, 192 Neb. 485, 486, 222 N.W.2d 573, 575 (1974), which states that although an evidentiary hearing is not always necessary on an application for post conviction relief, "such a hearing is usually advisable to avoid protracted litigation."

The judgment of the District Court is reversed,

and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.