STATE OF NEBRASKA, APPELLEE, V. DANIEL THOMAS MEIS, APPELLANT.
445 N.W.2d 610

Filed September 15, 1989.   No. 88-808.

Robert B. Creager, of Berry, Anderson, Creager & Wittstruck, P.C., for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.
The defendant, Daniel Thomas Meis, has appealed from the order of the district court which denied him a hearing on and overruled his second motion for postconviction relief. The proceedings regarding his first motion are found in *State v. Meis*, 223 Neb. 935, 395 N.W.2d 509 (1986). His direct appeal, which contains most of the facts concerning his conviction for first degree murder, may be found in *State v. Meis*, 217 Neb. 770, 351 N.W.2d 79 (1984). We affirm the order of the trial court.

A defendant seeking postconviction relief has the burden of establishing a basis for such relief, and the findings of the district court will not be disturbed on appeal unless clearly erroneous. *State v. Patterson*, 232 Neb. 304, 440 N.W.2d 242 (1989); *State v. Gagliano*, 231 Neb. 911, 438 N.W.2d 783 (1989).

In his first motion for postconviction relief, the defendant alleged that he was denied effective assistance of counsel at trial and on appeal and that the prosecutor conducted himself in such a way as to result in prosecutorial misconduct. The district court allegedly refused to hear evidence on the defendant's numerous other claims because they could have been raised on direct appeal.

After an evidentiary hearing, the district court denied the defendant's request for postconviction relief. On appeal, this court affirmed, finding that the claims on which the district court allegedly did not permit evidence all could have been, and some were, raised on direct appeal, including the trial court's failure to make an entry on the record as to the voluntariness of the defendant's impeaching statement. Additionally, the issue of prosecutorial misconduct could also have been raised on appeal. This court further found that there was no factual support for the allegations of ineffective assistance of counsel at trial and on appeal, including the allegation relating to trial counsel's failure to object to statements made by the prosecutor in closing argument and failure to fully cross-examine witnesses.

Regarding trial counsel's alleged ineffectiveness in not objecting to statements in the prosecutor's closing argument, trial counsel testified at the postconviction hearing that he had discussed with cocounsel and the defendant whether to object and decided against objecting. In light of that testimony, this court found the failure to object to be a matter of trial strategy. As to the claim that trial counsel failed to fully cross-examine witnesses, this court held that the defendant failed to allege facts to show how he suffered prejudice and also failed to prove prejudice.

In his second motion for postconviction relief, the defendant alleged that he was denied effective assistance of counsel in that his postconviction counsel (1) failed to make a record and offer

proof that his trial counsel did not hear portions of the prosecutor's closing argument and therefore did not object that the argument was contrary to the evidence; (2) failed to adequately argue the trial court's failure to make a finding with respect to the voluntariness of certain of the defendant's statements and the admissibility of those statements for impeachment purposes after suppressing the statements; (3) failed to raise all reasonable bases for relief, including (a) trial counsel's failure to discuss with defendant all available defenses and lesser-included offenses, and (b) trial counsel's failure to properly prepare for and cross-examine one of the State's expert witnesses; and (4) failed to object to expert testimony on the issue of whether the defendant received effective assistance of counsel.

According to the defendant, with respect to the foregoing allegations of errors and omissions on the part of his postconviction counsel, he was prejudiced in that (1) the conduct of counsel was less than that which a lawyer with ordinary training and skill would have provided the defendant; (2) but for the unreasonableness of counsel's effort, there existed a reasonable probability that the outcome of the proceeding would have been different sufficient to undermine confidence in the decision; and (3) the evidence or arguments, if properly developed by counsel at the postconviction proceeding and at the original trial, would have raised a reasonable doubt and would have resulted in the acquittal of the defendant on all charges.

After hearing arguments from both sides via a telephone conference call, the district court denied the defendant an evidentiary hearing on his second motion for postconviction relief, making the following pertinent findings: (1) The trial jury was instructed to not be influenced by arguments of counsel not supported by the record, the record of the first postconviction proceeding reflects that trial counsel made a tactical and strategic decision not to object to the prosecutor's closing argument, and the argument made by the prosecutor related to evidence that was an insignificant matter in the context of all evidence presented at trial; (2) the trial court's admission of the defendant's statements for impeachment

purposes constituted an independent determination of the court that the statements were voluntary, and defendant failed to allege that his statements were not voluntary or how he was or could have been prejudiced by the admission of the statements; (3) trial counsel's argument to the jury constituted performance at least as well as would have been made by a lawyer of ordinary training and skill in criminal law in the area, was a matter of trial strategy, and adequately covered the subject of manslaughter given that the jury may have considered a request for a manslaughter conviction as inconsistent with the defendant's claim of innocence; (4) the defendant's allegation of ineffective assistance of counsel due to the manner in which trial counsel cross-examined one of the State's expert witnesses has previously been addressed and dismissed by this court; and (5) there is no reasonable probability that the result of defendant's first postconviction proceeding would have been different if counsel had objected to the expert testimony relating to the effective assistance of counsel.

Defendant assigns as error that the district court erred (1) in failing to allow the defendant an evidentiary hearing, (2) in holding that effective assistance of counsel is governed by a "locality rule," (3) in determining that the defendant was represented by competent counsel at his trial and in his earlier postconviction proceeding, and (4) in holding that expert testimony was admissible to determine whether the defendant received effective assistance of counsel.

The defendant is entitled to bring this second proceeding for postconviction relief because the grounds relied upon, ineffective assistance of postconviction counsel, did not exist at the time of the filing of the first motion for postconviction relief. See, *State v. Nance,* 227 Neb. 581, 418 N.W.2d 598 (1988); *State v. Ohler,* 215 Neb. 401, 338 N.W.2d 776 (1983). However, such a motion cannot be used as a substitute for an appeal or to secure a further review of issues already litigated. See *State v. Neal,* 231 Neb. 415, 436 N.W.2d 514 (1989).

## STANDARD FOR DETERMINING EFFECTIVE ASSISTANCE OF COUNSEL

The defendant argues initially that the standard for

ineffective assistance of counsel established by this court is in conflict with the standard established by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), because of the "locality rule" added to the Nebraska standard.

As most recently articulated by this court in *State v. Patterson*, 232 Neb. 304, 308, 440 N.W.2d 242, 245 (1989), the standard to be applied is as follows:

When, in a postconviction motion, a defendant alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as an attorney with ordinary training and skill in the criminal law in the area. Further, there must be a showing of how the defendant was prejudiced in the defense of his or her case as a result of the attorney's actions or inactions.

According to the defendant, the Court in *Strickland, supra*, did not *suggest that the effective assistance of counsel is to be measured by the relative competence of a small group of lawyers* in a particular region of the country. However, the Court did hold that "*[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard* of reasonableness." (Emphasis supplied.) 466 U.S. at 687-88.

This court decided prior to *Strickland* that ineffective assistance of counsel would be measured by the *performance of "a lawyer with ordinary training and skill in the criminal law in his area."* (Emphasis supplied.) See *State v. Leadinghorse*, 192 Neb. 485, 489, 222 N.W.2d 573, 577 (1974). Contrary to the defendant's contentions, the Nebraska standard is not in conflict with the *Strickland* standard. In Nebraska, the objective standard of reasonableness to be used is the performance of a lawyer with ordinary training and skill in the criminal law in the area.

In further support of his contention, the defendant cites *Hawkman v. Parratt*, 661 F.2d 1161 (8th Cir. 1981), in which the

court rejected a locality rule in sixth amendment cases. A careful reading of the opinion, however, *reveals that a locality rule is not invalid, it simply is not accepted in federal courts.* In *Hawkman* the court explained:

> Appellant state of Nebraska argues that the federal district court ordered an evidentiary hearing in this case to determine whether the performance of Hawkman's counsel was "at least as well as a lawyer with ordinary training and skill in the criminal law in his area," namely, the area of Valentine, Nebraska. In ordering the hearing, the district court stated, *inter alia,* "[s]ince in this case evidence regarding the standard of performance for an attorney was not developed at the state hearing, an evidentiary hearing is, therefore, appropriate." It appears to us that the district court convened the hearing simply to elicit opinions as to what actions a reasonably competent attorney would have taken on Hawkman's behalf. . . . It is true that all witnesses who testified at the federal hearing were from western Nebraska and specifically from Valentine or Scottsbluff. However, the federal district court: (1) correctly set forth the applicable constitutional standards of counsel competence in this circuit; (2) expressly stated in its opinion that an evidentiary hearing was held "concerning the standard of performance for an attorney with ordinary training and skill"; and (3) clearly did not apply the Nebraska standards of counsel effectiveness set forth in *State v. Leadinghorse, supra,* 222 N.W.2d at 577. If the *Leadinghorse* standards differed from the federal standards delineated in our opinions, they would, of course, not bind a federal district court.

661 F.2d at 1165-66.

The defendant's contention that the effectiveness of counsel cannot be measured by comparison with the performance of a lawyer of ordinary training and skill in the criminal law in the area is without merit.

## DENIAL OF AN EVIDENTIARY HEARING

The defendant argues that he was entitled to an evidentiary hearing on his motion for postconviction relief. An evidentiary hearing may be denied on a motion for postconviction relief

when the records and files in the case affirmatively establish that the defendant is not entitled to relief. *State v. Threet*, 231 Neb. 809, 438 N.W.2d 746 (1989). In a proceeding under the Postconviction Act, the applicant is required to allege facts which, if proved, constitute a violation or infringement of rights, and the pleading of mere conclusions of fact or of law is not sufficient to require the court to grant an evidentiary hearing. *Id.*

## THE PROSECUTOR'S CLOSING ARGUMENT

The defendant argues that his contention that his counsel made no objection because counsel did not hear the argument is different from the issues he raised about the prosecutor's closing argument in his first postconviction proceeding. According to the defendant, an evidentiary hearing is necessary to determine whether counsel heard the statements and decided as a matter of strategy not to object or whether counsel simply did not hear the argument.

The defendant's claim is without merit. In affirming the denial of postconviction relief the first time, this court considered the defendant's contention that he received ineffective assistance of counsel at trial and on appeal because his counsel failed to object to statements of the prosecutor in closing argument. Noting that the defendant's counsel testified at the postconviction hearing that he discussed whether to object with cocounsel and the defendant, this court found the failure to object to have been a matter of counsel's trial strategy. Implicit in trial counsel's testimony that he considered and discussed whether to object to the prosecutor's comments is the fact that trial counsel did hear the comments.

## ADMISSION OF SUPPRESSED STATEMENTS FOR IMPEACHMENT

The defendant's challenge of the admissibility of suppressed statements for purposes of impeachment has already been addressed by this court. On direct appeal, this court upheld the use of the statement for impeachment purposes, noting that the defendant made no claim that the statement was involuntary. In his first motion for postconviction relief, the defendant's contention that the trial court erred in failing to make an entry on the record as to the voluntariness of the defendant's

impeaching statement was summarily dismissed because the claim had been raised on appeal. In this motion for postconviction relief, the defendant contends that postconviction counsel was ineffective in failing

> to adequately argue and/or develop an argument on the record concerning the Trial Court's failure to make a finding with respect to the voluntariness of certain of the defendant's statements, and the admissability [sic] of those statements for impeachment purposes following an Order of the Court suppressing those statements.

The defendant is, quite simply, beating a dead horse. This is the third time the issue of the voluntariness of the suppressed statement has been raised by the defendant and the third time he has failed to allege that the statement was in fact involuntary.

## OTHER CLAIMS FOR RELIEF

The defendant argues that postconviction counsel failed to raise two issues which, according to the defendant, were apparent on the record and should have been raised if counsel was conscientiously representing the defendant's interests.

The first issue has to do with whether trial counsel discussed with the defendant all available defenses to the charge, including the possibility of arguing for conviction of a lesser-included offense. The defendant contends post-conviction counsel was ineffective in not arguing that trial counsel was ineffective because of the "all or nothing defense" that the defendant was not guilty by reason of accident.

During closing argument, the defendant's trial counsel stated:

> I think that the State has failed to meet its burden of proof that murder in the first degree was committed. It's failed to meet its burden of proof that murder in the second degree was committed. It's failed to meet its burden of proof that manslaughter was committed. And it's failed to meet its burden of proof that it wasn't an accident. And that burden of proof is beyond a reasonable doubt.
>
> One final thing I'd like to touch on is the unlawful act in the manslaughter. You are going to be asked to look at that. I think the Judge may instruct you on the offense of

assault. When you look at that offense, you have to look at the offense, if any was committed, at the time of the shooting.

. . . .

. . . It is a tragedy when a young man loses his life. But the decision you have to make is whether the State has met its burden of proof in murder I, murder II, manslaughter, and that this was not an accident. I think when you examine the evidence that you have before you, you are going to find that the State has not met its burden of proof beyond a reasonable doubt, and it will justify a verdict of not guilty.

According to defendant's present appellate counsel, the defense of "accident" would not even be a defense under the facts of this case. He argues that having a gun unintentionally discharge "while struggling with the victim would be an unintentional killing while in the commission of an unlawful act, to-wit: assault, unlawful discharge of a firearm, etc." Brief for appellant at 27. Accordingly, counsel continues, the offense would be manslaughter pursuant to Neb. Rev. Stat. § 28-305 (Reissue 1985). He also argues that defense trial counsel should have requested an instruction on and argued self-defense.

We deal first with the matter of self-defense. In order to maintain some consistency with the defendant's own testimony and to avoid detracting from its credibility, trial counsel could hardly have argued self-defense. This was entirely inappropriate given the fact that defendant insisted throughout all of his testimony that he did not intend to kill the victim; i.e., he did not intend to and did not in fact use any force against the victim, Thomas Schuchardt. The defense of justification states that "the use of force upon or toward another person is justifiable when the actor [defendant] believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." Neb. Rev. Stat. § 28-1409 (Reissue 1985).

When asked on cross-examination whether he, the defendant, had said, "I had to blow him away," the defendant responded, "I remember us talking about the shells and that I didn't mean to blow him—shoot him, something like that, but

it wasn't that I had to do anything." Further on, defendant testified, "I don't remember exactly what I said, but it had [sic] to the effect I wouldn't do it just because I couldn't breathe."

Under the circumstances, trial counsel would not have been justified in arguing self-defense.

Defendant's present argument that having a gun unintentionally discharge while in the commission of an unlawful act such as an assault or unlawful discharge of a firearm would also find no support in the posture of the case in which trial counsel was left following his client's testimony. Defendant denied that he in any manner assaulted the victim. He denied that he intentionally fired the weapon. His statement that the gun accidentally discharged, without more, would not amount to a criminal act.

Finally, appellate counsel criticizes trial counsel for arguing accident as a defense. However, to understand the argument that was made at trial, it is necessary to examine the court's instructions.

The court correctly set forth the elements which the State must prove in order to establish first degree murder, second degree murder, or manslaughter, i.e., that defendant killed the victim purposely and with deliberate and premeditated malice; that he killed the victim intentionally, but without premeditation; or that he killed him without malice, either upon a sudden quarrel or unintentionally while the defendant was in the commission of an unlawful act. There was no evidence that this occurred upon a sudden quarrel; whatever fighting had been going on had covered a period consisting of most of the evening, and defendant denied that he had any quarrel with the victim at the time of the killing. That would leave only the second prong of manslaughter, unintentional killing while in the commission of an unlawful act. It was obvious that the only unlawful act during which the killing occurred would have to have been an assault, and the court defined the various degrees of assault. However, as previously stated, defendant's testimony completely negatived an assault on his part.

As defined in the instructions, it was necessary to prove an intentional act on the part of the defendant, whether it be the actual killing to support first or second degree murder, or an

unlawful assault to support the charge of manslaughter.

By instruction No. 10, the trial court instructed the jury:

> Regarding Count I, the defendant contends that he shot and killed Thomas A. Schuchardt accidentally, and he thus denies that the killing was done purposely and with deliberate and premeditated malice; he thus denies that he intentionally killed Thomas A. Schuchardt; and he denies that he killed Thomas A. Schuchardt either upon a sudden quarrel, or unintentionally while he was in the commission of an unlawful act.
>
> The claiming of such a defense does not shift to the defendant the burden of proving that the homicide occurred by accident.
>
> As explained in Instruction No. 4, the burden of proof is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged or included therein, and that burden never shifts.

Trial counsel perhaps was incorrect, semantically speaking, in stating that the burden was on the State to prove that the killing was not accidental. However, what his argument amounted to was that in order to convict, the State had the burden of proving all of the elements of the charged crime or one of the lesser-included offenses, and in order to do so it would in effect be proving that the shooting was not an accident. Perhaps the State could have objected to his characterization of the burden of proof, but it did not, and certainly such an argument favored the defense.

In denying defendant an evidentiary hearing, the district court found that

> trial counsel's argument to the jury constituted performance at least as well as would have been made by a lawyer with ordinary training and skill in criminal law in the area, was a matter of trial strategy, and that trial counsel adequately covered the subject of a manslaughter conviction in view of the risk that asking for a manslaughter conviction could have been considered by the jury as inconsistent with the defendant's testimony claiming innocence.

This finding is not clearly erroneous and therefore cannot be

disturbed on appeal.

The second issue postconviction counsel allegedly failed to raise to establish that trial counsel was ineffective relates to trial counsel's handling of scientific evidence at trial, specifically the results of the neutron activation test done to determine the presence of gunpowder. In the earlier postconviction appeal, this court addressed the issue of whether trial counsel was ineffective in failing to properly cross-examine the State's forensic expert and found that trial counsel was not ineffective. The defendant contends that the test conducted on the defendant has previously been considered but that previous inquiry did not address the question of the test conducted on the victim.

This court may examine and take judicial notice of its own proceedings and judgment where certain aspects of the controversy have been previously considered and determined, in cases which are interwoven and interdependent. *State v. Hunt*, 212 Neb. 304, 322 N.W.2d 624 (1982). A review of the briefs submitted in the appeal from the denial of the defendant's first motion for postconviction relief reveals that the issue under consideration at that time was the validity of the neutron activation test conducted on the hands of the victim.

## EXPERT TESTIMONY REGARDING EFFECTIVE ASSISTANCE OF COUNSEL

The defendant's last argument is that postconviction counsel was ineffective in not objecting to the offer of expert testimony by the State regarding the reasonableness of trial counsel's efforts. Generally, expert testimony is not admissible as proof that assistance of counsel in a criminal case was ineffective. *State v. Gagliano*, 231 Neb. 911, 438 N.W.2d 783 (1989). Nevertheless, as the district court determined, there is no basis to conclude that it is reasonably probable that the result of the first postconviction proceeding would have been different had counsel objected to such testimony from Richard Krepela, the State's expert witness. This finding of the district court not being clearly erroneous, it cannot be disturbed on appeal.

The defendant is entitled to no postconviction relief, and the order and judgment of the district court are affirmed.

AFFIRMED.