IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. SMITH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SABRINA J. SMITH, APPELLANT.

Filed November 28, 2023.    No. A-23-262.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Sabrina J. Smith appeals her plea-based convictions of fourth offense refusal to submit to a test, driving under revocation, and operating a motor vehicle to avoid arrest. She contends that the sentences imposed are excessive and that she received ineffective assistance of trial counsel. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

In June 2019, a police officer observed Smith's car speeding, followed her vehicle, and after Smith failed to signal a lane change, illuminated the overhead lights on his cruiser to pull her over, but Smith did not stop. The officer then activated the cruiser's siren, but Smith continued for another 10 blocks before finally pulling over. Upon contacting Smith, officers observed that Smith had bloodshot, watery eyes and smelled of alcohol. Officers also learned that Smith's driver's

- 1 -

license was revoked. As a result of these events, Smith was charged with nine counts: (1) driving under the influence/refusal, fourth offense, a Class IIA felony; (2) refusal to submit to a chemical test, fourth offense, a Class IIA felony; (3) driving under revocation, a Class IV felony; (4) operating a motor vehicle to avoid arrest, a Class I misdemeanor; (5) possession of marijuana or synthetically produced cannabinoids (1 oz. or less), an infraction; (6) possession of drug paraphernalia, an infraction; (7) possession of an open alcohol container, an infraction; (8) failure to signal a turn or lane change, an infraction; and (9) speeding, an infraction. After being charged, Smith was released on bond and absconded to Texas. In August 2019, she failed to appear at a court hearing, and a bench warrant was issued for her arrest. Three years later, Smith was located and arrested. Smith alleged that she chose to drive after receiving a frantic telephone call from her son's friend, who stated that his girlfriend, who was 5 months pregnant, needed a ride to the hospital due to an emergency condition.

Pursuant to a plea agreement, Smith pled no contest to refusal to submit to a test, a Class IIA felony; driving under revocation, a Class IV felony; and operating a motor vehicle to avoid arrest, a Class I misdemeanor. The refusal to submit to a test was subsequently enhanced to a fourth offense. The remaining charges were dismissed by the State.

The State provided a factual basis which set forth that, on June 24, 2019, a police officer noticed a vehicle speeding and initiated a traffic stop. However, the vehicle continued another 10 blocks before pulling over. The officer contacted the driver, who was identified as Smith, whose license had been revoked for 15 years. The officer noticed a smell of alcohol and that Smith had bloodshot, watery eyes. After Smith exited the vehicle, the officer noticed a container of vodka in the center console. After submitting to standardized field sobriety tests, including a preliminary breath test, which showed impairment, Smith was arrested and transported to jail. At the jail, an officer read Smith the postarrest chemical test advisement form, which she signed, but Smith later refused to submit to a breath test.

At the March 2023 sentencing hearing, Smith's trial counsel stated:

Ms. Smith's a 43-year-old woman, a mother of numerous children and a couple of grandchildren now. She left the state. She doesn't deny that. She shouldn't have. She became super, super anxious and scared of this process because she had . . . a very difficult time communicating with [her attorney at that time]. And when [her former attorney] said that you are just going to go to jail no matter what, there's nothing you can do about it, and had a difficult time communicating with him, she ran.

There's no two ways about that. She went to Texas. Her family is there. Her husband is there. It's notable that she had no interaction with the law . . . while in Texas. So there's that.

She does have the support of her mother and sister, who are in court today behind me. . . . I have known the family for quite a few years. . . .

They are very supportive of Ms. Smith and her attempts at sobriety. They understand that she needs treatment, and Ms. Smith understands she needs treatment. When I first came upon her, she told me the reason that she drove [was] to help someone else. She now understands that while driving she put a great number of people at risk.

And she has been involved in several of the available classes in the jail. She has been in jail this entire time since she was picked up. She would like to do probation. She now understands that in order to be able to parent her children well -- and she has a one-year-old –- she's going to have to deal with her addictions.

. . . it's clear that she has an addiction for drugs and for alcohol. And she recognizes that now. She understands that the path and the likelihood of getting probation is tough, but . . . the PSI [presentence investigation report] identified a probation they thought would be helpful if you were open to that. And she would like to be given that opportunity.

I just received an alcohol and chemical evaluation late last week. And . . . it mirrors identically . . . on what . . . probation says should be done. She has violated probation in the past. She has an extensive record. . . . we understand that.

And I have advised her that, . . . when she absconded, she violated Nebraska law again. And she was fortunate that the county attorney didn't charge her for that also.

She is much more aware of the risks she put people in . . . when she was driving intoxicated. And I think that she could actually succeed at probation this time because of the support she has from her family because she's been honest with them about what she's facing, and I don't know that that was the case in prior ones.

And I think that the honesty with herself and with her family will make a big difference in that success. We'd ask for probation consistent with the PSI.

Smith told the court: "I just want to apologize for my actions. I could have caused harm to people. I am very thankful that I did not. I have learned from my mistakes." After the State submitted the case on the PSI, the district court stated:

. . . So in determining what sentence the court should impose I have considered the defendant's age, mentality, education and experience, social and cultural background, past criminal record, motivation for the offense, as well as the nature of the offense and the amount of violence involved in the commission of the crime.

I have considered the information contained within the presentence investigation report, including the statements of counsel here today, and find that imprisonment is necessary because a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law.

The district court sentenced Smith to 4 to 8 years' imprisonment for fourth offense refusal to submit to a test; 18 to 24 months' imprisonment for driving under revocation; and 1 year of imprisonment for operating a motor vehicle to avoid arrest. The sentences were ordered to be served concurrently and she was granted credit for 167 days served. The court also ordered the revocation of Smith's driver's license for a period of 15 years on the refusal to submit and driving under revocation convictions, to be served concurrently. Smith was also granted credit for any administrative license revocation and the court's order further provided that after 45 days, Smith could apply for an interlock permit and installation. Smith has timely appealed to this court and is represented by different appellate counsel.

## III. ASSIGNMENTS OF ERROR

On appeal, Smith assigns as error that (1) the sentences imposed were excessive and constituted cruel and unusual punishment and (2) she received ineffective assistance of trial counsel when trial counsel (a) "bludgeoned her into a plea bargain she did not want by threatening to withdraw on the eve of trial," (b) failed to view all of the evidence, including the body camera and cruiser camera videos, which would have provided a defense to the charges of refusal to submit to a chemical test, (c) failed to assert the defense of necessity and proceed to trial on that defense, and (d) failed to present all the materials requested by Smith and failed to argue any mitigating factors during the sentencing hearing.

## IV. STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

It is within the discretion of the trial court whether to impose probation or incarceration, and an appellate court will uphold the court's decision denying probation absent an abuse of discretion. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013); *State v. Montoya*, 29 Neb. App. 563, 957 N.W.2d 190 (2021).

Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirements. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022); *State v. Betts*, 31 Neb. App. 737, 989 N.W.2d 441 (2023). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *State v. Warner, supra*; *State v. Betts, supra*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCES

Smith's first assignment of error is that the sentences imposed were excessive. She contends that the punishments imposed were disproportionate to her crimes; that the sentences imposed were disproportionate to the offenses constituting cruel and unusual punishment; and that a sentence of probation was more appropriate or, in the alternative, her prison sentences "should have been only long enough to make sure [s]he got the drug treatment necessary." Brief for appellant at 17.

Smith was convicted of refusal to submit to a test, fourth offense, a Class IIA felony; driving under revocation, a Class IV felony; and operating a motor vehicle to avoid arrest, a Class I misdemeanor.

Regarding Smith's conviction for fourth offense refusal to submit to a test, her sentence of 4 to 8 years' imprisonment is within the statutory sentencing range for Class IIA felonies, which are punishable by a minimum of no imprisonment and a maximum of 20 years' imprisonment and the requirement of a minimum of 1 year of imprisonment set forth in Neb. Rev. Stat. § 60-6,197.03(8) (Reissue 2021). See, Neb. Rev. Stat. § 60-6,197 (Reissue 2021) (DUI; implied consent); § 60-6,197.03(8) (DUI; implied consent; penalties); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022) (felonies; classification of penalties).

Regarding Smith's conviction for driving under revocation, her sentence of 18 to 24 months' imprisonment is within the statutory sentencing range for Class IV felonies, which are punishable by a minimum of no imprisonment and a maximum of 2 years' imprisonment followed by 0 to 12 months' post-release supervision. See, Neb. Rev. Stat. § 60-6,197.06 (Supp. 2015) (driving during revocation); § 28-105. Because Smith was concurrently sentenced to a Class IIA felony, she was not subject to post-release supervision. See § 28-105(6). Additionally, the court properly revoked Smith's operator's license for 15 years pursuant to § 60-6,197.06.

Regarding Smith's conviction for operating a motor vehicle to avoid arrest, her sentence of 1 year of imprisonment is within the statutory sentencing range for Class I misdemeanors, which are punishable by a minimum of no imprisonment and a maximum of 1 year of imprisonment and/or a $1,000 fine. See, Neb. Rev. Stat. § 28-905 (Reissue 2016) (operating motor vehicle to avoid arrest); Neb. Rev. Stat. § 28-106 (Reissue 2016).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Ramirez*, 314 Neb. 419, 990 N.W.2d 550 (2023). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*.

In determining an appropriate sentence for Smith, the district court stated that it considered the information contained in the presentence investigation report (PSR). At the time of the PSR, Smith was 43 years old, married, and had six dependents. She had earned a bachelor's degree and reported that she is an "advanced medical assistant." Smith's criminal history includes four convictions for speeding; three convictions for DUI; two convictions each for possession of marijuana (less than 1 oz), minor in possession, and obstruction of law; and single convictions for no proof of ownership, possession of drug paraphernalia, driving under suspension, fugitive in state, disorderly conduct, failure to carry an operator's license, no valid registration, and obstructing a peace officer. For these convictions, Smith has been ordered to pay fines, serve time in jail, and has been sentenced to probation four times, with the most recent two probations revoked. The level of service/case management inventory assessed Smith as a medium high risk to reoffend. Smith admitted that she uses marijuana, that she is a "binge-drinking alcoholic," and that she was under the influence of alcohol at the time of the present offenses. It is also worth noting that prior to the original sentencing date in 2019, Smith absconded to Texas and was not

located until 2022. Additionally, although Smith indicates in the PSR that she refused to take the breathalyzer because she did not believe that she had a legal obligation to do so, the PSR includes the postarrest chemical test advisement that Smith signed, which states that the officer informed her that the refusal to submit to the chemical or breath test "is a separate crime for which you may be charged."

Smith contends that her trial counsel failed to address Smith's strengths that were included in the presentence investigation report and the progress that she made while in jail and failed "to mention that [Smith] did not have an entry on her record for twelve years and that there was no evidence that she had ever driven outside of this emergency situation." Brief for appellant at 14. However, the court reviewed the PSR which included this information. The PSR included a letter that Smith wrote to the court in which she informed the court that she had not been in any trouble either in Texas or in jail; no longer drank alcohol; had held 2 trustees positions in jail; had completed various classes including a Seeking Safety Class, Interactive Journaling, and moral reconation therapy; was in the process of completing the Purpose Driven Life Class; and was involved in AA meetings, church, and bible study. Regarding Smith's claim that trial counsel failed to deliver letters from family members to the judge, we do note that the PSR does not include letters from Smith's family members. However, the PSR includes information regarding the closeness of Smith to her family and trial counsel told the court that Smith had the support of her family, especially her mother and sister, who were present at the sentencing. And the district court was aware of Smith's criminal history including the dates of her offenses. Thus, the court was privy to all of this information that Smith contends that trial counsel failed to provide to the court.

In sum, based upon factors including that the sentences imposed were within their respective statutory sentencing ranges, the benefit that she received from the plea agreement, her criminal history, the previous revocation of two sentences of probation, that Smith absconded to Texas, we find that the district court did not abuse its discretion in the sentences imposed and in not sentencing Smith to probation.

Further, we reject Smith's claim that her sentences constituted cruel and unusual punishment. When conducting a proportionality review under the Eighth Amendment, each sentence is considered individually to determine whether it was grossly disproportionate to the crime. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023). Here, as we previously found, Smith's sentences were within their respective statutory sentencing ranges. A sentence of imprisonment which is within the limits of a valid statute ordinarily is not a cruel and unusual punishment in the constitutional sense. *State v. Loschen*, 221 Neb. 315, 376 N.W.2d 792 (1985); *State v. Leadinghorse,* 192 Neb. 485, 222 N.W.2d 573 (1974). Here, Smith's sentences were not grossly disproportionate to the offenses for which she was convicted. Smith's arguments relating to her sentences fail.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Smith's second assignment of error is that she received ineffective assistance of trial counsel when trial counsel (a) "bludgeoned her into a plea bargain she did not want by threatening to withdraw on the eve of trial," (b) failed to view all of the evidence including the body camera and cruiser camera videos which would have provided a defense to the charges of refusal to submit

to a chemical test, (c) failed to assert the defense of necessity and proceed to trial on that defense, and (d) failed to present at sentencing all the materials requested by Smith and failed to argue any mitigating factors.

As this court recently stated in *State v. Betts*, 31 Neb. App. 737, 745-46, 989 N.W.2d 441, 448 (2023):

> To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Lessley, supra*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner, supra*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

(a) Plea Agreement

Smith's first claim of ineffective assistance of trial counsel is that counsel "bludgeoned her into a plea bargain she did not want by threatening to withdraw on the eve of trial." Brief for appellant at 6 and 19. She contends that trial counsel failed to prepare her for trial, failed to discuss plea agreements with her, and that counsel sent her 3 letters in 3 days which letters first demanded money or a plea and then indicated with a motion to withdraw that Smith either plead or that counsel would withdraw from the case on the eve of trial. Smith further argues that she "was not given a choice. She was not informed about the evidence against her, the defenses available to her or any information to make an informed decision." Brief for appellant at 22. Accordingly, she

contends that her no contest pleas were not made knowingly, intelligently, and voluntarily. We find that this claim is refuted by the record.

During the plea hearing, Smith affirmed that she had not received any promises or threats to enter the plea agreement and affirmed her desire to waive her rights and plead no contest. She further admitted that she had been given sufficient time to discuss her case with trial counsel and was satisfied with trial counsel's representation. See *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018) (finding ineffective assistance of counsel claim refuted by defendant's statements to court during plea colloquy); *State v. Liner*, 24 Neb. App. 311, 886 N.W.2d 311 (2016) (record affirmatively demonstrates defendant was not coerced or threatened into accepting plea bargain given testimony to that effect during plea hearing). Where the record refutes a claim of ineffective assistance of counsel, no recovery may be had. See *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010); *State v. Liner, supra*. Because the record refutes Smith's claim that she was "bludgeoned" into accepting the plea agreement, this claim fails.

(b) Failure to Review Evidence

Smith's second claim of ineffective assistance of trial counsel is that counsel failed to view all of the evidence including the body camera and cruiser camera videos which would have provided a defense to the charges of refusal to submit to a chemical test. She contends that she

> made numerous requests of counsel to share the [body-worn] camera and [c]ruiser cam videos, and any video from inside the jail. . . . The cruiser cam would have shown exactly the details of the un-high speed chase and how noticeable the sirens and lights were. The [police] reports attached to the PSI indicate that the entire incident was 12-15 blocks and . . . that once engaged by the officers[, Smith] did not [sic] continue to drive at a high rate of speed.
>
> The body worn camera would have given definite proof of whether [Smith] refused to submit to [a] chemical test or whether there may in fact have been a misunderstanding between [Smith] and the officer.

Brief for appellant at 18.

We first note that cruiser video regarding the stop of Smith's vehicle has no bearing on her conviction of refusing to submit to a chemical test. And she neither assigns as error or argues that trial counsel was ineffective in failing to review this evidence as it relates to her convictions for driving during revocation or operating a motor vehicle to avoid arrest.

Regarding Smith's claim that counsel was ineffective in failing to view body camera footage, if any existed, and that such footage may have shown that there was a misunderstanding between Smith and the officer regarding her refusal to submit, the record refutes this claim. In her letter to the court, Smith specifically admitted that

> I did a first breathalyzer test at the scene where I was arrested. I was asked to do a second one at the jail in which I refused because I was under the impression it was a constitutional right to do so but I was very wrong and unaware that it was a felony charge carrying 20 years [of] possible prison time.

Despite Smith's claim that she was unaware that it was a felony to refuse to submit to a breath or chemical test, a copy of the postarrest chemical test advisement was made part of the PSR. This advisement reflects that the officer informed Smith that "Pursuant to law, I (advising officer) am requiring you to submit to a chemical test or tests of your <u>breath</u> to determine the concentration of alcohol in your body. Refusal to submit to such test or tests is a separate crime for which you may be charged." (Emphasis in original.) This advisement form was signed by Smith and the witnessing officer. Because the record establishes that Smith admitted to refusing to submit to a postarrest chemical test of her breath and that she had been advised that refusal was a criminal offense for which she could be charged, this allegation of ineffective assistance of counsel fails.

(c) Defense of Necessity

Smith's third claim of ineffective assistance of trial counsel is that counsel failed to assert the defense of necessity as outlined in Neb. Rev. Stat. § 28-1407 (Reissue 2016) and proceed to trial on that defense. The defense of necessity is also referred to as the "choice of lesser harm" or "choice of evils" defense. We find that the record on direct appeal is sufficient to determine this claim and we reject it on two bases.

First, this claim fails because Smith was not entitled to this defense. In *State v. Schmaltz*, 304 Neb. 74, 79, 933 N.W.2d 435, 439 (2019), in addressing the applicability of the choice of evils or necessity defense to the defendant choosing to drive and leaving the scene of an accident, the Nebraska Supreme Court explicitly stated:

> Section 28-1407(1) provides a justification for "[c]onduct which the actor believes to be necessary to avoid a harm or evil to himself or another . . . ." This justification is available only if the "harm or evil sought to be avoided by such conduct is greater than that sought to be prevented." Neb. Rev. Stat. § 28-1406(4) (Reissue 2016) defines "[a]ctor" as "any person who uses force in such a manner as to attempt to invoke the privileges and immunities afforded him by sections 28-1406 to 28-1416."

> The choice of evils justification is generally inapplicable here. The statutes at issue in this appeal were all enacted at the same time and concern "justification" for the use of force.

> The only person in this scenario who could be the "actor" contemplated in § 28-1407 is [the defendant]. Even if his conduct in leaving the scene of the accident was done to avoid a harm or evil, the conduct was not done with force. A justification defense under these statutes is unavailable.

Similarly, the only person in the scenario presented here, who would be the actor contemplated by § 28-1407, is Smith. Even if her conduct in choosing to drive while intoxicated or while her license was revoked was done to avoid harm or evil, the conduct was done without force. A justification defense under these statutes is unavailable. And because the justification defense was unavailable, trial counsel could not be ineffective for failing to assert or proceed to trial on that defense. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument to the trial court. *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023).

The second reason why this assigned error fails is that her claim is refuted by the record. Although Smith now asserts that she raised this defense with her attorneys and they simply failed to act upon it, Smith informed the court, during the plea hearing, that she had sufficient time to speak to her counsel regarding her case, had told her counsel everything that she knew about the case, had discussed all possible defenses with her counsel, and was satisfied with her counsel's performance. For these two reasons, this assignment of error fails.

(d) Sentencing Hearing

Smith's final claim of ineffective assistance of trial counsel is that during the sentencing hearing, counsel failed to present all the materials requested by Smith and failed to argue any mitigating factors. Specifically, she contends that trial counsel failed to highlight mitigating factors including failing to mention that the last entry on her criminal history occurred over a decade prior to her current offenses, failing to specifically list her accomplishments while in jail, failing to provide the court with letters from three of her family members, and further, that trial counsel provided the court with an alcohol evaluation that contained inaccurate information. We find that the record refutes this assigned error.

As we mentioned in the excessive sentence portion of this opinion, although Smith contends that trial counsel failed to orally inform the court regarding the dates of her last convictions, the PSR contained Smith's criminal history including the dates of her prior offenses.

Regarding counsel's failure to orally inform the court of Smith's accomplishments while in jail, this information was contained in the PSR, which included Smith's letter to the court which detailed that she had not been in any trouble either in Texas or in jail; no longer drank alcohol; had held two trustees positions in jail; had completed various classes including a Seeking Safety Class, Interactive Journaling, and moral reconation therapy; was in the process of completing the Purpose Driven Life class; and was involved in AA meetings, church, and bible study.

Smith also claims that trial counsel failed to deliver letters from her family members to the court. Although the PSR does not include letters of support from Smith's family members, it does include information regarding Smith's closeness to her family and trial counsel told the court that Smith had the support of her family, especially her mother and sister, who were present at the sentencing. Thus, the court was aware of the support provided by Smith's family for her.

Further, although Smith claims that trial counsel stated during the sentencing hearing "that he just got an alcohol evaluation the other day and show[ed] it to the judge," brief for appellant at 25, the record reflects that trial counsel actually stated that he "just received an alcohol and chemical evaluation late last week. And . . . it mirrors identically . . . what probation says should be done." Thus, contrary to Smith's assertion, counsel did not state that he provided the alcohol and chemical evaluation to the court. And, in our review of the record, including the PSR, we did not locate a 2023 drug and alcohol evaluation. Thus, the record before this court refutes Smith's allegation.

Finally, Smith contends that "we have little to understand" the court's determination of her sentences. This allegation is unrelated to a claim of ineffective assistance of counsel. However, we do note that a sentencing court is not required to articulate on the record that it has considered each

sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

In sum, having reviewed Smith's claims of ineffective assistance of trial counsel, we find that the record was sufficient to address her claims and that they all fail.

## VI. CONCLUSION

Having considered and rejected Smith's assignments of error, we affirm her convictions and sentences.

AFFIRMED.